# William W. Flippo, et al.

## v.

# F & L Land Company, et al.

Record No. 900155

January 11, 1991

Present: All the Justices

*H. David O'Donnell (Green and O'Donnell*, on brief), for appellants.

*David A. Penrod (Hoover, Hoover, Penrod & Davenport*, on brief), for appellee F & L Land Company.

No brief or argument for appellee Richard A. Claybrook, Jr.

JUSTICE COMPTON delivered the opinion of the Court.

In this appeal in a purchaser's suit for specific performance of a contract for the sale of real estate, we determine whether the trial court erred in sustaining a seller's demurrer.

"A demurrer admits the truth of all material facts properly pleaded. Under this rule, the facts admitted are those expressly alleged, those which fairly can be viewed as impliedly alleged, and those which may be fairly and justly inferred from the facts al-

leged." *Rosillo* v. *Winters*, 235 Va. 268, 270, 367 S.E.2d 717, 717 (1988). On demurrer, a court may examine not only the substantive allegations of the pleading attacked but also any accompanying exhibit mentioned in the pleading. *See* Rule 1:4(i) (mention in pleading of accompanying exhibit makes exhibit part of pleading). A court in ruling upon a demurrer may consider documents not mentioned in the challenged pleading when the parties so stipulate. *Elder* v. *Holland*, 208 Va. 15, 18, 155 S.E.2d 369, 372 (1967) (stipulated that transcript of prior hearing be incorporated into motion for judgment for purposes of ruling on demurrer). Employing these principles, we will summarize the pleading challenged in this case.

In an amended bill of complaint, appellants William W. Flippo and Janice Flippo (collectively, Flippo) sought specific performance of a multi-party contract involving land in Harrisonburg, Virginia, and in Catawba County, North Carolina. Flippo named as defendants appellee F & L Land Company, William W. Self, David G. Parker, and appellee Richard A. Claybrook, Jr.

The contract, labelled "Exchange Agreement" and attached to the amended bill, was dated July 18, 1988. It was designed to provide a tax-free exchange of like-kind property and rollover of gain on the sale of a principal residence, as allowed by applicable provisions of the Internal Revenue Code. The property to be exchanged consisted of separate tracts of realty owned by Flippo, F & L, and Self. F & L was to convey to Claybrook as Escrow Agent its Harrisonburg property and to receive in exchange from Flippo $160,000 and a deed of trust note for $152,000. Flippo was to convey his North Carolina property, a principal residence, to the Escrow Agent and was to receive a deed to F & L's property, subject to the $152,000 deed of trust.

Self was to convey his North Carolina property, a principal residence, and to transfer $162,000 to the Escrow Agent, and to receive in exchange a deed to Flippo's property. Parker was to transfer to the Escrow Agent $160,000 and was to receive a deed to Self's property in exchange.

The deeds, the funds, and the deed of trust note were to be delivered to the Escrow Agent who, on the day of closing, would transfer the various assets to the appropriate party. The parties also were to deliver to the Escrow Agent additional documents and were to perform other acts necessary to complete the transaction. For example, the Escrow Agent was to prepare and deliver to

each party a settlement statement to be endorsed and returned to him. Flippo, F & L, and Self were to provide mechanics' lien waivers. Flippo and Self were to provide termite inspection reports. Some of the documents were to be delivered to the Escrow Agent prior to settlement while others and the funds were to be delivered at settlement.

Paragraph 14 of the agreement detailed the sequence of events to effect a "simultaneous closing of the . . . property exchanges." Paragraph 18(d) of the agreement provided that it was "specifically subject to" the condition that all parties be able "to simultaneously transfer the properties included under this agreement." Paragraph 18(e) prohibited amendment of the agreement "except in writing and signed by all the parties." Finally, the agreement provided for settlement on July 31, 1988, "or as soon thereafter as title can be examined and papers prepared, allowing a reasonable time to correct any defects reported by the Title Examiner."

In the amended bill, Flippo alleged that closing of the transaction never occurred but that he was "ready, willing and able to tender performance" of his obligations under the contract "in a timely fashion." Flippo further asserted that when it appeared that "F & L was attempting to avoid its obligations under the contract" by charging that Flippo failed to close in a timely manner, Flippo waived the simultaneous closing condition designed to benefit him, in an "effort to avoid loss of valuable contractual rights." Flippo also alleged that F & L was informed of a scheduled closing to be held in Harrisonburg on December 20, 1988, but that F & L refused to comply with the agreement. Additionally, Flippo alleged that both Self and Parker were "unable or unwilling" to perform under the contract.

In the prayer of the amended bill, Flippo asked that the defendants be ordered specifically to perform the agreement or, in the alternative, that F & L be ordered to deliver a deed to Flippo upon Flippo's "lawful waiver of the simultaneous closing condition, Flippo being ready, willing and hereby offering specifically to perform his portion of the agreement with F & L."

By stipulation, the parties agreed that the trial court should consider a series of seven letters for the purpose of ruling on the demurrer. This correspondence documents the conduct of the parties from August 12, 1988, the date of the first letter, to December 13, 1988, the date of the last letter.

On August 12, Claybrook, as attorney for F & L, wrote to Self. Claybrook "reminded" Self that closing under the terms of the agreement had been "set for July 31, 1988." Claybrook wrote that unless the closing could be completed by August 26, 1988, F & L would "consider the exchange agreement void." Claybrook noted that F & L "has provided for a reasonable extension of time in setting the closing date and is now in a position to allow no further extensions, because the company has had to forego following up on other potential purchase offers in attempting to accommodate the parties to the aforesaid exchange agreement."

On September 9, Claybrook, again as attorney for F & L, wrote Flippo advising "that due to the inability of the various parties to close on the required real estate transactions in a timely manner even after being granted several time extensions" beyond July 31, F & L "considers the Exchange Agreement null and void as of this date." Referring to prior letters written by Self, Claybrook stated that "Mr. Self gives no assurances that he and the other parties to these transactions will ever be in a position to comply with the requirements anticipated under our original Exchange Agreement." Claybrook wrote that F & L intended to have its property reappraised and invited a "new offer" from Flippo "for purchase of this property at the current market value for the commercial and non-commercial acreage."

On September 12, Dean M. Nichols, an attorney for Flippo, responded to the letter of September 9. Stating that F & L had no "legal right to void the exchange agreement," the attorney pointed out that the agreement did not make time of the essence for closing on July 31. Observing that "a reasonableness standard" should be used for determining the date of closing when time is not of the essence, Flippo's counsel asserted that the time delay had not been unreasonable, given the fact that the transaction involved four parties and three parcels of land "located a great distance apart." Counsel wrote that "we do not feel that if closing takes place prior to September 30, 1988, that there would be an unreasonable delay." Counsel then called on F & L to "change its position and agree to close this transaction as long as it closes by September 30, 1988."

Claybrook responded on October 6. He wrote Flippo's attorney that "due to the repeated delays in setting a closing date," F & L would consider the agreement void "if closing cannot be completed by next Friday, October 14, 1988 . . . in Harrisonburg.

Time is of the essence." In the letter, Claybrook expressed the "concerns" of his client about Flippo's "ability to obtain financing in order to carry out this closing, whether or not Pete Self is able to perform his obligations under the Exchange Agreement."

On October 25, Claybrook wrote Flippo's attorney, stating that "since closing has not taken place on mutually satisfactory terms by October 14, 1988," F & L considered the agreement "null and void," and that F & L considered "itself to be exonerated" from any obligation to any of the parties to the agreement.

On December 9, Flippo's attorney wrote to the principal of F & L, with a copy to Claybrook, stating "that we are planning on closing under the exchange agreement" on December 20, 1988 at counsel's Harrisonburg office. The letter stated that Flippo "has waived any contingencies under the exchange agreement as to the closing on his property in North Carolina with Pete Self and Dave Parker." Counsel wrote: "In any event, there will be collected funds ready to be disbursed subsequent to recordation of the respective deeds in the amount of $160,000, less respective expenses chargeable to F & L Land Company and a deed of trust note payable to F & L Land Company in the amount of $152,000 as provided in the exchange agreement." Flippo's attorney wrote: "We did not find persuasive your self-imposed deadlines."

On December 13, Claybrook wrote to Flippo's attorney summarizing the exchange of correspondence. Claybrook noted "that F & L accepted your proposed September 30 deadline, and even agreed to an extension to October 14, 1988." Claybrook wrote: "With no reasonable explanation having been offered for a delay beyond the October 14 date, nor any response having been offered to my letter dated October 25, F & L thereby concluded that any further delays in the closing date would be unreasonable" and that F & L would not be bound further under the agreement.

Flippo instituted the present suit in March 1989. After the amended bill was filed in August 1989, F & L responded with a demurrer in which Claybrook joined. Following argument, the trial court sustained the demurrers upon considering the bill's allegations, the agreement, and the series of letters.

The trial court assigned six grounds for its ruling. (1) Flippo erroneously alleged that only two parties were essential to the performance of the contract and that the participation by the other parties was incidental and could be waived. (2) Flippo failed to allege compliance by the parties with the sequence of events for a

simultaneous closing, as set forth in paragraph 14, and failed to allege that the conditions of paragraph 18(d), requiring the parties to be able to simultaneously transfer the properties, had been fulfilled. (3) Flippo erroneously asserted that "performance or tender of acts on [his] part could be waived," allowing Flippo to proceed to closing with only F & L. This would amount to a unilateral amendment of the agreement in violation of paragraph 18(e) specifying that amendment must be by agreement of all parties. (4) Flippo was unable to close the transaction in a timely manner and "unilaterally" attempted to rewrite the agreement by establishing a new closing date of December 20. (5) Flippo failed to allege that he or any of the parties were ready, willing, and able to close the transaction by tendering the required documents and cash to the Escrow Agent. (6) Flippo failed to allege that the Escrow Agent was able to tender or did tender performance of his obligations under the agreement.

We awarded Flippo an appeal from the November 1989 order which dismissed the suit against F & L and Claybrook. The case was continued as to Self and Parker. Self had filed an "Objection to Jurisdiction" and a demurrer. Apparently, Parker has not appeared in the suit.

When the trial court's decision is condensed, there are two broad bases for its ultimate conclusion that the amended bill is insufficient in law. First, Flippo failed to allege that he, along with Self and Parker, were prepared or able to engage in a simultaneous closing of the transaction at any time. Second, Flippo was not entitled unilaterally to waive material conditions of the agreement and to attempt a closing only with F & L. We find no error in the court's decision.

■ Addressing the first basis, we do not overlook the assertion in paragraph 12 of the amended bill that Flippo "was and is ready, willing and able to tender performance of [his] obligations under this contract in a timely fashion." The correspondence when read against the background of the agreement belies that bare conclusory assertion. Flippo may have been willing to close, but he was never ready, in the sense of being prepared, or able to close.

■ The stated purpose of the agreement was to accomplish "tax-free exchanges of like-kind property . . . and a rollover of gain on the land of a principal residence." Paragraph 14, labelled "Sequential Events at Closing," outlined specific responsibilities of all the parties in order to effectuate a simultaneous closing. These

responsibilities, many of which were to be performed prior to closing, included the obligation to deposit both funds and executed deeds with the Escrow Agent. Clearly, these were conditions precedent, and were not mere promises or statements of "mutual obligations," as contended by Flippo. The contemplated "exchanges" could not have occurred until these specific acts had been performed. *See Smith* v. *McGregor*, 237 Va. 66, 75, 376 S.E.2d 60, 65 (1989).

■ And, where an act is to be done by one party as a condition precedent to the right to claim performance on the part of another, the first party cannot compel such performance without alleging the achievement of such act or averring a sufficient excuse for its non-performance. *Granite Building Co.* v. *Saville*, 101 Va. 217, 223, 43 S.E. 351, 353 (1903). Here, Flippo alleged neither the performance of the conditions of paragraph 14 nor a sufficient excuse for non-performance.

■ Addressing the second basis of the decision below, we agree that Flippo cannot take advantage of the rule that a purchaser's breach of a condition inserted in an agreement for the purchaser's sole benefit may be waived unilaterally by that party, without affecting the other party's obligation to perform. *See Mann* v. *Addicott Hills Corp.*, 238 Va. 262, 267, 384 S.E.2d 81, 84 (1989). Flippo alleged that the simultaneous closing condition was designed to benefit only him and Self because they were the only parties deriving tax advantages from selling their principal residences. Thus, according to Flippo, he was entitled to waive that provision and to insist on closing only with F & L.

■ But the simultaneous closing condition benefitted F & L as well as Flippo and Self. Without the concurrent sale of Flippo's North Carolina property, Flippo's financial position would be impaired. This negative financial impact on Flippo would adversely affect the integrity of Flippo's note for $152,000 which F & L was obligated to accept. Thus, F & L would have achieved a decided benefit had the multi-party exchange closed simultaneously.

Accordingly, the judgment of the trial court will be

*Affirmed.*