## CIRCUIT COURT OF FAIRFAX COUNTY

Ashco Int'l, Inc.

v.

Westmore Shopping Ctr. Assocs. et al.

June 19, 1997

Case No. (Chancery) 147609

BY JUDGE THOMAS S. KENNY

This matter is before the Court on Defendants' Demurrer to Counts I, III, IV, and VI of the Bill of Complaint to Enforce a Mechanic's Lien. After careful consideration, the Court overrules the Demurrer to Counts I and II to uphold the validity of the mechanic's lien and for Quantum Meruit and sustains the Demurrer to Counts IV and VI for Tortious Interference with a Contract and Conspiracy, respectively. Pursuant to the agreement of the parties, the Court further sustains the Demurrer to Count V for Statutory Conspiracy and the Plea to Crave Oyer.

### I. *Background*

On January 14, 1997, Complainant Ashco International, a general contractor, filed a Bill of Complaint to enforce a mechanic's lien against Defendant Westmore Shopping Center Associates. Ashco alleges that

Westmore breached a contract Westmore had entered into with Ashco to construct an addition to Westmore Shopping Center ("the contract") by failing to pay Ashco the balance due under the contract after Ashco had substantially completed work on the project. Ashco further alleges that Defendant Hodzic Architects, whose architectural services Westmore had retained for the project, took actions to cause Westmore to breach the contract and, moreover, conspired with Westmore to fabricate grounds for breaching the contract and to appropriate the labor and material of Complainant. Ashco seeks compensatory and punitive damages.

## II. Demurrer to Count I to Uphold the Validity of the Mechanic's Lien

Defendants demur to Count I of the Bill of Complaint on the ground that the Memorandum of Mechanic's Lien, Exhibit A to the Bill, is insufficient as a matter of law. Defendants argue that the lien is invalid since the memorandum (i) inadequately describes the property subject to the lien, (ii) fails to describe with sufficient particularity the type of materials and services furnished, and (iii) fails to provide information on the time the amount of the claim was to be due and payable.

### A. Description of Property Subject to Lien

Virginia Code §§ 43-4 and 43-5 provide that a memorandum of lien must contain a "brief description" of the property covered by the lien. The description is deemed adequate under Code § 43-15 if the property is reasonably identifiable by the description given and the memorandum conforms substantially to the requirements of Code § 43-5 and is not willfully false. The purpose of the description requirement is to enable an owner, purchaser, or creditor to identify the property subject to the lien. *Penrod & Stauffer Bldg. Sys. v. Metro Printing & Mailing Servs., Inc.*, 229 Va. 150, 152 (1985).

The instant description of the property subject to the lien meets the requirements of Code § 43-15. First, the memorandum complies with the requirements of Code § 43-5 by providing information on the type of structure on which work was done and the description and location of the real property subject to the lien. Va. Code § 43-5(3), (4). Lines 3 through 4c of the memorandum state the following:

3. Type of structure: Commercial store building.

4a. Description of property: Part of Parcel 2 as described in Deed Book 6562, page 1777, containing 48,967 square feet of land.

4b. Address of property: 10927 Main Street in the City of Fairfax, Virginia.

4c. Tax map reference: 57-1-24--47A.

The memorandum adequately describes the structure subject to the lien as a "commercial store building." The memorandum further adequately describes the real property on which the commercial store building is located by providing a deed book reference, a street address, and a tax map reference. The memorandum on its face and the pleadings further do not raise the possibility that the description provided in the memorandum is willfully false. Accordingly, the Court finds that the instant memorandum of lien complies with the requirements of Code § 43-5.

Second, the property on which the lien is claimed is reasonably identifiable in light of the description given. The street address, tax map reference, and deed book reference to a specific parcel together give the property's exact location and description. The clarity of the description provided in the present case is unquestionably equivalent to, if it does not surpass, the descriptions considered in *Taylor v. Netherwood*, 91 Va. 88, 91 (1895),[1] and *Penrod & Stauffer Bldg. Sys., Inc.*, 229 Va. at 153-54.[2]

Defendants contend that the reference to a "Part of parcel 2," as noted in line 4a of the memorandum, renders the description of the property subject to the lien inadequate because the language fails to describe the extent of parcel 2 burdened by the lien and, consequently, creates an overbroad lien. The Court rejects this argument. The memorandum of lien in question provides an adequate location and description of the property subject to the lien for purposes of a reasonable identification under Code § 43-15. The Court enforcing the lien, however, shall determine the actual extent of the land apportioned to the lien as necessary for the convenient use and enjoyment of the structure under Code § 43-3(a). *See Rosser v. Cole*, 237 Va. 572, 577-78 (1989). Accordingly, a mere reference to "parcel 2" would have sufficed for

---

[1] In *Taylor*, the Court upheld as adequate a memorandum describing the property as a three-story building at a street address in Richmond, the names of the adjacent cross streets, the frontage and depth of the lot, and the name of the reputed owner.

[2] In *Penrod*, the Court upheld as adequate a description of a "pre-engineered metal building addition" at a specific street address in Sterling with a specific deed book and land record reference.

purposes of adequately describing the property subject to the lien under Code §§ 43-5 and 43-15. Furthermore, since the memorandum of lien applies expressly only to the commercial store building Ashco erected on parcel 2, the lien is not void for being overbroad.[3]

Consequently, the Court finds that the description of the property burdened by the lien in the instant case is adequate as a matter of law under Code § 43-15. The property is reasonably identifiable by the description given, and the memorandum conforms substantially to the requirements of Code § 43-5.

## B. *Description of Materials and Services Furnished*

A memorandum of lien also must contain a description of the type of materials or services furnished under Code § 43-5(1). The instant memorandum of lien describes the materials and services furnished as "[m]aterials and labor provided by claimant as the general contractor of a building erected on the property." Defendants contend that the aforementioned description is inadequate since it does not describe the materials and services furnished with particularity. Defendants argue that the memorandum should allocate the amount claimed to the specific materials and services provided to allow the owner of the property or a third party to determine whether the property is lienable from the face of the lien. Furthermore, Defendants suggest that the lien should specify the particular materials and labor provided by the general contractor as opposed to the subcontractor to avoid exposing the owner to being liened twice for the same work, once by the general contractor and once by the subcontractor.

The Court finds that the description of materials and labor furnished in the instant case is adequate. The description conforms substantially to the requirements of § 43-5 by specifying that the type of materials and labor provided were those of the general contractor in erecting the building. Furthermore, the instant description is more descriptive than the description used in the memorandum of lien the Supreme Court considered in *United Masonry*, which was "masonry labor and materials." 218 Va. at 367. *See*

---

[3] The cases addressing floating liens, liens voidable for overbreadth, are inapplicable to the instant case, which does not involve separate contracts adding disproportionate values to a property or apportionment of amount due between several properties and several owners. *See United Masonry, Inc. v. Jefferson Mews, Inc.*, 218 Va. 360 (1977) (holding lien void for failing to apportion total amount claimed under two contracts among various individual condominium properties); *Woodington Elec., Inc. v. Lincoln Sav. & Loan Ass'n*, 238 Va. 623 (1989) (finding that contractor's lien against two or more parcels of land, where contractor had not done work on all the parcels but attempts to enforce lien against all parcels, is an invalid overinclusive lien).

*Thomas v. West*, 31 Va. Cir. 313 (1993). Although defendants suggest that the description in question should allocate the amount claimed to the specific materials and services provided and should describe the specific materials and services furnished by the general contractor, as opposed to a subcontractor, the Court finds that the description meets the statutory threshold. Determining the amount allocable to the materials and services furnished and identifying the particular materials and services provided by the general contractor, as opposed to a subcontractor, remains a question for the enforcement of the lien. Provisions with respect to the enforcement of a lien are to be liberally construed. *H. N. Francis & Co. v. Hotel Rueger, Inc.*, 125 Va. 106 (1919). Finding substantial compliance with the statute, the Court finds no basis for declaring the description of materials and services furnished invalid.

## C. *Information on Time the Amount of Claim Was Due and Payable*

The last question which remains in considering the validity of the instant memorandum of lien is whether a memorandum of lien is inadequate as a matter of law for failing to provide information on the time the amount and consideration of the claim will be due and payable. Defendants contend that the memorandum of lien in the case at bar is invalid for including only information on the date from which interest on the above amount is claimed and not information on the date the amount and consideration of the claim are due and payable. The Court rejects defendants' argument and finds the instant memorandum of lien to be valid under Code § 43-15 for substantially complying with the requirements of Code § 43-5.

Under Code § 43-15, an inaccuracy in a memorandum of lien shall not invalidate a lien if the memorandum conforms substantially to the sample form memoranda of lien set forth in Code §§ 43-5, 43-8, or 43-10. While Code § 43-4 provides that a general contractor's memorandum of lien "shall show … the amount and consideration of his claim and the time or times when the same is or will be due and payable," Code § 43-5 omits a requirement for such information in its sample form memorandum for general contractor liens but instead requires a statement of the "date from which interest on the above amount is claimed." Although it can be argued that the time when the claim is due is the same time as the date from which interest is claimed, it is not necessary to make such a finding since Code § 43-5 specifically provides that the memorandum required by Code § 43-4 shall be sufficient if it substantially emulates the sample memorandum in form and effect. Consequently, Code § 43-5 provides a safe harbor and any discrepancy between the information sought under Code §§ 43-4 and 43-5 shall be resolved in favor of Code § 43-5

in determining whether the memorandum of lien is adequate as a matter of law. *See, e.g., American Standard Homes Corp. v. Reinecke, Trustee*, 245 Va. 113 (1993) (interpreting a discrepancy between Code §§ 43-3 and 43-4, which do not mention interest, and the forms under Code §§ 43-5, 43-8, and 43-10, which require information on the date when interest is claimed, in favor of the form requirements); *J.S.C. Concrete Const., Inc. v. Drewer Dev. Corp.*, 36 Va. Cir. 313 (1995) (finding that substantial compliance with the form requirements of § 43-5 meets the statement of intent requirement under Code § 43-4); *Boehl v. BMW Restoration Co. of Va., Inc.*, 31 Va. Cir. 256 (1993) (holding that a mechanic's lien is not invalid for failing to specify date from which money is due as required under Code § 43-4 because it substantially complies with Code § 43-5); *TQY Investments v. Rodgers Co.*, 26 Va. Cir. 40 (1991); *Hickerson Electric Serv. Corp. v. Drewer Dev.*, 25 Va. Cir. 247 (1991).

The instant memorandum of lien substantially complies with the requirements of Code § 43-5. The memorandum provides information on the date from which interest is claimed. Since the memorandum of lien filed in the instant case meets the requirements of the safe harbor provision of Code § 43-5, the memorandum of lien is valid.

### III. *Demurrer to Count III for Quantum Meruit*

Defendants demur to Count III of the Bill of Complaint for quantum meruit on the ground that the express contract between Ashco and Westmore precludes a quantum meruit claim. Defendants argue that Plaintiffs are precluded from bringing a quantum meruit claim at this time absent any allegation that the underlying contract is unenforceable or void. The Court overrules Defendants' Demurrer to Count III and holds that Plaintiff has properly pleaded a quantum meruit claim in the alternative under Rule 1:4(k) and Code § 8.01-281. *See Fox v. Deese*, 234 Va. 412 (1987). Plaintiff need not allege that the underlying contract is void or unenforceable to state a claim for relief for quantum meruit.

### IV. *Demurrer to Counts IV and VI for Tortious Interference with a Contract and Conspiracy*

Defendants demur to Counts IV and VI for tortious interference and conspiracy on the ground that Hodzic, as Westmore's agent acting within the scope of his agency, was legally incapable of tortiously interfering with the Westmore contract and conspiring with Westmore. Plaintiff, in opposition,

argues that there are insufficient facts before the Court on Demurrer for the Court to determine whether an agency relationship existed between Hodzic and Westmore and the scope of that agency. Furthermore, Plaintiff contends that even if Hodzic were Westmore's agent, Hodzic would be capable of conspiring with Westmore under the "independent stake" exception.

Based on the undisputed facts and unambiguous documents before the Court on Demurrer, the pleadings support the inference that a limited agency relationship existed between Hodzic and Westmore and that Hodzic acted within the scope of such agency in performing the acts alleged in support of the conspiracy and tortious interference claims. The pleadings do not, however, support the inference that Hodzic had an independent stake in achieving the objective of the conspiracy. The independent stake exception does not apply. Consequently, the Court sustains the Defendant's Demurrer to Counts IV and VI.

## A. *Agency Relationship and Scope of Agency*

Claims of tortious interference with a contract and common law conspiracy both require the presence of two or more persons in the respective acts of interfering with a valid contractual relationship or conspiring to accomplish an unlawful purpose. *See Commercial Business Sys., Inc. v. BellSouth Serv., Inc.*, 249 Va. 39 (1995) (finding that a common law conspiracy consists of two or more persons combined to accomplish, by some concerted action, an unlawful purpose by lawful means or a lawful purpose by unlawful means); *see also CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22 (1993) (noting that the elements of a cause of action for tortious interference are the existence of a valid contractual relationship or business expectancy, knowledge of the relationship on the part of the tortfeasor, intentional interference causing a breach in the relationship, and damages). A single entity, accordingly, cannot conspire with itself or intentionally interfere with its own contract. *See Fox v. Deese*, 234 Va. 412, 428 (1987). A principal and an agent are not separate persons for purposes of a conspiracy or tortious interference action and, likewise, cannot conspire with each other or interfere with their own contractual relationship. *See Charles E. Brauer Co. v. NationsBank of Va.*, 251 Va. 28, 466 S.E.2d 382 (1996).[4] Consequently Hodzic would have been

---

[4]  The Court recognizes that *Fox* and *Brauer Co.* expressly support only the rule that a principle and an agent acting within the scope of the agency cannot conspire with each other. They do not address a claim of "inter-agency" tortious interference. In fact, the Court is not aware of any cases that extend the principle of inter-agency conspiracy to a tortious interference claim. Nevertheless, the Court finds that the principle applies equally to both

legally incapable of conspiring with Westmore if Hodzic was acting as Westmore's agent in carrying out the acts underlying the tortious interference and conspiracy claims.

An architect is an agent of the owner with limited authority defined by the terms of the contract of employment or the contract between the owner and general contractor. *Kirk Reid Co. v. Fine*, 205 Va. 778 (1965). In the instant action, the contract between the owner, Westmore, and general contractor, Ashco, of October 10, 1995, ("the contract") defines the scope of Hodzic's limited agency. The contract, which the parties by agreement incorporated into the Bill of Complaint pursuant to their motion carrying over, provides in Article 4.1 that the "Architect will have authority to act on behalf of the Owner only to the extent provided in the Contract Documents." Consequently, the contract creates an express agency relationship between Hodzic and Westmore, the scope of which is limited by the terms of the contract.

The alleged actions attributable to Hodzic under the tortious interference and conspiracy counts fall within the scope of Hodzic's agency as defined by the contract. In Count IV for tortious interference, Plaintiff alleges that Hodzic contributed to delays in the performance of the contract (¶ 31), failed and refused to approve change orders requested by Plaintiff (¶ 32), entered incorrect information into the minutes of all meetings regarding the status and quality of Plaintiff's performance under the contract (¶ 33), and incorrectly certified that Plaintiff breached the contract (¶ 34). In Count VI for conspiracy, Plaintiff alleges that Hodzic and Westmore conspired to appropriate to their benefit labor and material of complainant (¶ 52), conspired to create grounds to breach the contract (¶ 53), and violated construction regulations (¶ 54).

The acts allegedly attributable to Hodzic fall within Hodzic's duties and responsibilities under the contract. Article 4.1 of the contract establishes that it is the architect's duty to provide for the administration of the contract. The architect has the duty to review and certify the amounts due to the contractor (4.4), reject nonconforming work (4.5), decide matters concerning performance under and requirements of the contract (4.7), and order minor changes in the work in the form of written orders (5.3). Since the acts allegedly attributable to Hodzic fall within the realm of Hodzic's duties of administering the contract and approving changes in the work, Hodzic did not exceed the scope of his agency relationship with Westmore.

The question whether an agency relationship exists is to be resolved by the fact finder unless undisputed facts or an unambiguous written document show

---

intra-agency conspiracies and tortious interferences and rules that an agent acting within the scope of the agency cannot tortiously interfere with the contractual relationship of the principal.

the existence of the relationship. *State Farm Mut. Auto. Ins. Co. v. Weisman*, 247 Va. 199, 203 (1994). In the instant action, the unambiguous contract creates an express agency relationship between Hodzic and Westmore. Hodzic's alleged acts do not exceed the scope of Hodzic's agency.

B. *Independent Stake Exception*

Plaintiff asks the Court to apply the independent stake doctrine as an exception to the principle that agents and principals are legally incapable of conspiring with each other (i.e., the intra-agency conspiracy principle). Relying solely on federal case law, Plaintiff suggests that under the independent stake exception, an agent is legally capable of conspiring with the principal if the agent has an independent personal stake in achieving the conspiracy's objective. *See Greenville Pub. Co. v. Daley Reflector, Inc.*, 496 F.2d 381, 399 (4th Cir. 1974) (applying the independent stake exception to the intra-corporate immunity doctrine); *Selman v. American Sport Underwriters, Inc.*, 697 F. Supp. 225 (W.D. Va. 1988) (holding that the independent personal stake exception must be interpreted narrowly). Assuming that the independent stake exception applies beyond the intra-corporate immunity doctrine to intra-agency conspiracies,[5] the facts alleged do not support the inference that Hodzic gained any direct personal benefit from the alleged conspiracy. Consequently, the Court finds that the independent stake exception does not save Plaintiff's claim. The Court sustains the Demurrer to Counts IV and VI.

V. *Demurrer to Punitive Damages Claim and Independent Willful Tort Exception*

Finally, Defendants demur to Plaintiff's claim for punitive damages on the ground that Plaintiff fails to allege an independent willful tort, a prerequisite for a claim for punitive damages in a breach of contract action. *See Kamlar v. Haley*, 224 Va. 699 (1983) (holding that "a plaintiff seeking punitive damages should allege a willful, independent tort in a count separate from that which alleges a breach of contract"). Defendant argues that Plaintiff's allegation of conspiracy against Westmore does not rise to the level of an independent tort since Plaintiff does not allege any conduct on the part of Westmore which, absent contractual obligations, constitutes a tort. Defendant contends that

---

[5] The Court is not aware of any Virginia cases applying the independent stake exception to intra-agency conspiracies and notes that the majority of federal cases addressing the principle have considered it only as an exception to the intra-corporate conspiracy doctrine. *See Buschi v. Kirven*, 775 F.2d 1240 (4th Cir. 1985).

Plaintiff's motives in allegedly breaching the contract do not give rise to an independent tort. *See A & E Supply Co. v. Nationwide Mut. Fire Ins. Co.*, 798 F.2d 669, 677 (4th Cir. 1986). The Court sustains the Demurrer to the punitive damages claim on the basis that no tort allegations remain in the case subsequent to the Court's ruling to sustain the Demurrer to Counts IV and VI.

## VI. *Conclusion*

The Court sustains the Demurrer to Counts IV and VI without leave to amend. Mr. Annino will please prepare and circulate an order reflecting this ruling. Defendants shall have twenty-four days from the date of this letter to file an answer to the remaining claims.