# CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Kmart Corporation

v.

Meadowbrook, L.L.C., et al.

## Case No. CL10–128

By JUDGE EDWARD L. HOGSHIRE

### November 17, 2010

At the conclusion of the hearing on October 15, 2010, to address demurrers filed by both Meadowbrook, L.L.C.'s and Bohler Engineering and Bohler's Motion Craving Oyer, the Court granted Bohler's Motion Craving Oyer but reserved ruling on the demurrers pending receipt of the contract between Bohler and Meadowbrook. To date, I have received neither the sketch order reflecting the ruling on October 15 nor the contract pursuant to that ruling. Since the contract in question is central to resolving the agency issue as presented in the demurrers, I am requesting that counsel for Defendants submit the contract, along with a sketch order reflecting the Court's ruling, noting Plaintiff's exceptions, within the next ten days.

### December 21, 2010

On April 9, 2010, Kmart Corporation filed a Complaint seeking an injunction and damages from the Defendant Meadowbrook, landlord to Kmart. On July 6, 2010, Kmart filed an Amended Complaint, requesting an injunction and damages against Meadowbrook for conspiring with Defendant

Bohler, its engineer, to breach the lease between Kmart and Meadowbrook. The Court denied Kmart's Motion for Preliminary Injunction in an Order entered August 9, 2010. On August 17, 2010, Meadowbrook and Bohler filed separate Demurrers. Both Defendants demur as to Counts II, III, and IV, and Bohler also demurs as to Count I. Each party has filed memoranda in support of their respective positions, and the Court heard argument on the Defendants' demurrers on October 15, 2010.

### Statement of Facts

The facts are derived from the Amended Complaint. On October 4, 1991, Kmart entered into a lease agreement with Charlottesville Partners, a Pennsylvania limited partnership, pursuant to which Kmart leased certain real property in the City of Charlottesville. (Am. Compl. ¶ 9; Pl.'s Ex. 1.) The property (the "Leasehold") is located at the intersection of U.S. Route 29 and Hydraulic Road. (Am. Compl. ¶ 9.) The October 4, 1991, lease agreement was modified by certain subsequent agreements. (Am. Compl. ¶ 10; Pl.'s Exs. 2–7.) The Leasehold included a large parking area (Am. Compl. ¶ 12) and was part of a larger tract of land (the "Ground Lease") held by Charlottesville Partners. (Am. Compl. ¶ 15.) In February 2005, Charlottesville Partners assigned the Ground Lease to Meadowbrook. (Am. Compl. ¶ 15.)

At some time thereafter, Meadowbrook entered into negotiations with Whole Foods Market Group, Inc. ("Whole Foods") and the City of Charlottesville regarding the construction of various permanent improvements within the Leased Premises, including a road and other encroaching improvements related to the construction of a Whole Foods Market. (Am. Compl. ¶ 18–19.) On or about April 11, 2008, Meadowbrook entered into an agreement with Bohler, pursuant to which Bohler would provide design and engineering services for the construction of a new road and the improvements to undeveloped portions of the Ground Lease. (Am. Compl. ¶ 20.) Kmart claims that Bohler and Meadowbrook recognized, not later than August 20, 2008, that the abovementioned construction would occur within Kmart's Leasehold. (Am. Compl. ¶ 20.) Kmart further alleges that Meadowbrook did not submit a formal construction proposal to Kmart's real estate department until February 2010. (Am. Compl. ¶ 8.)

Kmart's Amended Complaint alleges four counts: (I) Breach of Lease by Meadowbrook; (II) Conspiracy to Breach Lease; (III) Statutory Conspiracy to Breach Lease; and (IV) Injunction. Plaintiff acknowledges that the Court already denied injunctive relief and reasserts the issue to preserve it for any subsequent appeal. On August 17, 2010, Bohler filed its Answer to Plaintiff's Amended Complaint. Bohler also filed a Demurrer and a Motion Craving Oyer, along with supporting memoranda. Meadowbrook likewise filed its Answer and Demurrer on August 17, 2010. The Court

granted the Motion to Crave Oyer in a letter dated November 17, 2010, thereby incorporating the contract between Bohler and Meadowbrook into the pleadings. The parties disputed the salience of certain Change Orders appended to the Bohler Contract. However, the Change Orders appear on their face to have been incorporated into the original contract. Therefore, the duties and responsibilities outlined in the twenty-three Change Orders are part of the Bohler Contract properly before the Court. Both Bohler and Meadowbrook demur as to Counts II, III, and IV of Plaintiff's Amended Complaint, and Bohler also demurs as to Count I.

Count I does not seek relief from Bohler and therefore does not survive Bohler's demurrer. As to Count I, Kmart alleges that Meadowbrook's breach of the Kmart Lease is causing and will cause Kmart to suffer damages in the form of lost profits, loss of its positive business image, and diminution of the value of its Leasehold. (Am. Compl. ¶¶ 10, 11.) Kmart requests an award of compensatory damages equal to the diminution in value of the Leasehold from the time of commencement of construction until termination of the Lease and all options to extend the Lease, along with lost profits, other damages resulting from injury to its business, trade, and reputation, and damage to property. Kmart asserts that the abovementioned amounts are believed to exceed $500,000.00. (Am. Compl. ¶ 32.)

## Question Presented

Whether Defendant Bohler was acting as Defendant Meadowbrook's agent and within the scope of the agency such that Plaintiff's allegations of common law and statutory conspiracy to breach the Kmart Lease cannot survive demurrer.

## Standard of Review

A demurrer tests whether a complaint states a cause of action on which relief can be granted. *Grossman v. Saunders*, 237 Va. 113, 119, 376 S.E.2d 66, 69 (1989). In ruling on a demurrer, the court considers the legal sufficiency of the pleadings, not disputed facts. *Welding, Inc. v. Bland County Service Auth.*, 261 Va. 218, 226, 541 S.E.2d 909, 913 (2001). For the purposes of a demurrer, the court considers the facts in the light most favorable to the plaintiff. *Id.*

On demurrer, a court examines the allegations in the pleading as well as accompanying exhibits. *Flippo v. F & L Land Co.*, 241 Va. 15, 17, 400 S.E.2d 156, 157 (1991). When a demurrant's motion craving oyer has been granted, the court in ruling on the demurrer may properly consider the facts alleged as amplified by any written agreement added to the record on the motion. *Hechler Chevrolet, Inc. v. General Motors Corp.*, 230 Va. 396, 398, 337 S.E.2d 744, 746 (1985). Furthermore, a court considering

a demurrer may ignore a party's factual allegations contradicted by the terms of authentic, unambiguous documents that properly are a part of the pleadings. *See Fun v. Virginia Military Inst.*, 245 Va. 249, 253, 427 S.E.2d 181, 183 (1993).

By filing a demurrer, the moving party admits all of the material, well–pleaded facts in the pleadings, including those expressly alleged, those that can fairly be viewed as impliedly alleged, and all reasonable inferences arising from the facts alleged. *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24, 431 S.E.2d 277, 279 (1993); *Flippo*, 241 Va. at 16-17, 400 S.E.2d at 157. But the pleadings must set forth sufficient facts constituting a foundation in law for the judgment sought, not simply conclusions of law. *Kitchen v. City of Newport News*, 275 Va. 378, 385, 657 S.E.2d 132, 136 (2008) (*citing Hubbard v. Dresser, Inc.*, 271 Va. 117, 122, 624 S.E.2d 1, 4 (2006)). Further, the demurrer does not admit the correctness of such conclusions of law. *Ward's Equip., Inc. v. New Holland. N. Am.*, 254 Va. 379, 382, 493 S.E.2d 516, 518 (1997) (*citing Fox v. Custis*, 236 Va. 69, 71, 372 S.E.2d 373, 374 (1988)).

*Analysis*

Both statutory conspiracy and common law conspiracy require the existence of two parties to constitute a conspiracy; without this threshold requirement, neither agent nor principal can be liable. *Charles E. Brauer Co.*, 251 Va. at 35–36, 466 S.E.2d at 386–87 (1996). Once plaintiff has identified two separate parties to the conspiracy, he must then allege that the parties conspired to accomplish a "criminal or unlawful purpose" or, in the alternative, that they conspired to accomplish some purpose "by criminal or unlawful means." *Hechler Chevrolet, Inc. v. General Motors Corp.*, 230 Va. 396, 402, 337 S.E.2d 744, 748 (1985).

A. *Agency Relationship and Scope of Agency*

In the absence of concerted action between two or more parties, there can be no conspiracy. *Charles E. Brauer Co. v. NationsBank of Va.*, 251 Va. 28, 35–36, 466 S.E.2d 382, 386–87 (1996). A single entity cannot conspire with itself. *See Fox v. Deese*, 234 Va. 412, 362 S.E.2d 699 (1987). Provided that Bohler was an agent of Meadowbrook and continuously operating within the scope of its duties as an agent, Meadowbrook and Bohler are a single entity. *Charles E. Brauer Co.*, 251 Va. at 35–36, 466 S.E.2d at 386–87. Therefore, if Bohler was acting as an "agent" of Meadowbrook, the conspiracy claim cannot be maintained. Kmart alleges that Bohler was acting as an independent contractor pursuant to its agreement with Meadowbrook and, even if acting as an agent, Bohler's actions fall under

the "independent personal stake" exception to intercorporate immunity. (Am. Compl. ¶ 20; Pl.'s Mem. in Opp. to Demurrer, 7.)

Whether an engineer is an agent of the property owner depends on the contract between the parties and the actions taken to implement the contract; there is no rule in Virginia that an engineer, architect, or general contractor is always an agent of the owner. *See Will & Cosby and Assoc., Inc. v. Salomonsky*, 48 Va. Cir. 500, 502–03 (1999); *Britt Construction, Inc. v. Magazzine Clean, L.L.C.*, 69 Va. Cir. 478, 479 (2006). In determining the relationship between an engineering firm and the party who hired it, "agency depends on the exercise of control by the principal and the exclusivity of the services rendered by the agent." *Britt Construction*, 69 Va. Cir. at 479. Whether an agency relationship existed between the parties is for the finder of fact to decide, unless uncontested facts or an unambiguous written document properly before the court show the agency relationship. *State Farm Mut. Auto. Ins. Co. v. Weisman*, 247 Va. 199, 203, 441 S.E.2d 16, 19 (1994).

The agreement between Bohler and Meadowbrook ("Bohler Contract") is a multi–phase agreement under which Bohler was to "prepare revise [sic] the site engineering documents for final submission to the City of Charlottesville Planning Commission on April 22, 2008, and to assist in the processing of the approval of these improvements." Also included is a schedule of fees, a request for a professional services retainer, and an attachment entitled "Standard Terms & Conditions." The Contract was subsequently modified by twenty–three Change Orders that expanded Bohler's responsibilities to, *inter alia*, providing construction administration services and project coordination during the construction phase.

The Bohler Contract defines the scope of Bohler's authority, limiting the scope of Bohler's duties through language in the "Standard Terms & Conditions" attachment that "the Firm represents that services shall be performed within the limits described in accordance with the scope of services contained in the Contract." This language is similar to that found by the Circuit Court of Fairfax County to be unambiguous evidence of an express agency limited in scope by the terms of the contract in *Ashco Int'l, Inc. v. Westmore Shopping Ctr. Assoc.*, 42 Va. Cir. 427, 434 (1997). In that case, a general contractor alleged conspiracy to interfere with a contract between a property owner and the architect it hired to plan construction of an addition. *Id.* at 428. The architect and owner demurred to the conspiracy count on the grounds that the architect was acting within the scope of his agency, and thus he and the owner were legally incapable of conspiring. *Id.* at 432. Like Kmart, the defendant in that case also argued that the existence of an agency relationship was not appropriate on demurrer and that, even if there was an agency, the independent stake exception should apply. *Id.* at 433. The court ultimately held that it had sufficient facts in the complaint and the contract between the architect and owner to decide that an agency

relationship existed and that the agent acted within the scope of the agency, thereby sustaining the demurrer on the conspiracy claim. *Id.* at 434–35.

Plaintiff cites three Virginia cases to support its assertion that the agency determination is not appropriate at the demurrer stage, all of which are distinguishable and based on the individual facts in each case. In *Will & Cosby and Assoc., Inc. v. Salomonsky*, 48 Va. Cir. 500, 501 (1999), the contracts between the alleged agent and principal were not yet before the court. In *VMC Satellite, Inc. v. Stevens & Assoc.*, 68 Va. Cir. 103, 107 (2005), the court found "sufficient allegations" that the two individual defendants, the alleged agents, had taken steps in furtherance of the conspiracy before forming the defendant corporation, the alleged principal, to injure the plaintiff. And finally, although the court in *Britt Construction, Inc. v. Magazzine Clean, L.L.C.*, 69 Va. Cir. 478, 480 (2006), states simply that "the question of agency is not one that can be resolved on demurrer," the court was faced with a contract between the defendant architect and both the defendant owner and plaintiff general contractor that required the architect to "not show partiality to either" the defendant or plaintiff. Thus, whether an agency determination is appropriate at the demurrer stage is dependent on the specific circumstances of each case; it is not appropriate to assume an agency relationship between an engineer or architect and an owner, nor is it required to automatically decline to make this determination on demurrer.

Under this authority and the language in the Bohler Contract, Bohler is Meadowbrook's agent for the purposes of the design and construction of improvements on the property.

Further, the acts attributed to Bohler by Kmart are within the scope of its agency, as defined by the Bohler Contract. In Count II: Conspiracy to Breach Lease, and Count III: Violation of Virginia Code §§ 18.2–499 and 18.2–500(A), Kmart alleges that Bohler worked with Meadowbrook to relocate the main entrance to Kmart's parking lot and construct a new street and other encroachments on Kmart's leasehold. (Am. Compl. ¶¶ 35, 39.) These acts fall within Bohler's duties and responsibilities under the Bohler Contract to redesign the intersection and the new street and oversee the construction process. Since the acts allegedly attributable to Bohler are within the realm of duties required to administer and implement the contract, Bohler did not exceed the scope of its role as agent of Meadowbrook.

The acts attributed to Bohler are within the scope of Bohler's duties as agent of Meadowbrook. Because the unambiguous contract created an agency relationship between Bohler and Meadowbrook and because Bohler's actions did not exceed the scope of its agency, Bohler and Meadowbrook are to be treated as a single entity. As a single entity, Bohler and Meadowbrook could not engage in a conspiracy.

B. *Independent Stake Exception*

Kmart, in the alternative, argues that, even if Bohler and Meadowbrook are a single entity, the independent stake exception should apply to prevent "intercorporate immunity." This doctrine may be used to trump intercorporate agency immunity from conspiracy where the agent has an " 'independent personal stake' in achieving the corporation's impermissible purpose." *Eagle Paper Int'l, Inc. v. Expolink, Ltd.*, 2008 WL 170506 *6-7 (E.D. Va. 2008); *see also Greenville Pub. Co. v. Daily Reflector, Inc.*, 496 F.2d 391 (4th Cir. 1974). Kmart asserts that the independent personal stake for Bohler was the "additional profit from additional work it was able to perform" and thus this exception should apply to prevent agency immunity.

However, this Court has not seen any Virginia cases applying the independent stake exception to intercorporate immunity, let alone any cases applying this exception to inter–agency immunity. Assuming that the independent stake exception could apply, the facts alleged do not support the inference that Bohler had an independent stake from the alleged conspiracy. Like the defendant architects in *Ashco Int'l, Inc.*, 42 Va. Cir. at 434, who were, it is assumed, to gain a financial benefit from performing the job at issue, the resulting profit from performing work for which the party was hired is not grounds for finding an independent personal stake sufficient to establish a conspiracy absent two distinct parties.

## Conclusion

For the reasons stated above, Bohler's Demurrer as to all four counts is sustained and Meadowbrook's Demurrer as to Counts II, III, and IV is also sustained.