## Richmond

JERRY LEEDS V. G. MARSHALL MUNDY, RECEIVER AND TRUSTEE, ETC., ET AL.

November 29, 1971.

Record No. 7609.

Present, All the Justices.

*M. Caldwell Butler (David B. Hart; Eggleston, Butler & Glenn, on brief)*, for appellant.

*Lawrence C. Musgrove*, for appellees.

GORDON, J., delivered the opinion of the court.

Jerry Leeds brought this suit against Shenandoah Valley Leasing Corporation ("Shenandoah") and Helen C. Rice to recover an amount allegedly owing under a lease agreement. Shenandoah filed a cross-claim alleging its right to rescind the lease agreement on the ground of mistake or constructive fraud and asking judgment for the amount already paid to Leeds. Leeds now appeals from an adverse decree.[1]

---

[1] The case was instituted at law. With the consent of the parties, the trial court transferred it to the equity side. While the suit was pending, Shenandoah and Mrs.

Leeds operates an airplane sale and rental business in Fort Lauderdale, Florida. On March 29, 1966, Clinton M. Howlett, an officer and part owner of Shenandoah, flew to Fort Lauderdale, intending to lease an airplane from Leeds. Mrs. Rice and an airplane pilot and an airplane mechanic accompanied Howlett.

After meeting Leeds, Howlett examined an airplane, which Leeds offered to lease.[2] Later during the day, Leeds and Shenandoah executed a lease agreement providing for the leasing of the airplane and its equipment to Shenandoah for six months at a monthly rental of $1,250 payable in advance. Mrs. Rice guaranteed Shenandoah's payment of all amounts owing under the lease agreement.

The lease agreement provides:

"[S]aid airplane and equipment . . . to be in good operative condition at the time of delivery. The receipt and acceptance by the lessee of said airplane shall constitute an acknowledgment by the lessee that said airplane and equipment have been accepted and found in good, safe and servicable condition and fit for use. The lessee accepts said airplane at its present condition and agrees to hold lessor harmless from any and all claims arising out of any defects later discovered by the lessee or which might hereafter develop through its use and operation."[3]

After executing the lease agreement, Howlett piloted the airplane from Fort Lauderdale to Montgomery, Alabama, where he picked up passengers. On March 31 Howlett flew to Roanoke, Virginia,

Rice were each adjudicated bankrupt. G. Marshall Mundy, Receiver and Trustee in bankruptcy of Shenandoah Valley Leasing Corporation, and William G. Anderson, Trustee in bankruptcy of Helen C. Rice, were added as parties.

[2] Leeds testified that before the lease agreement was signed he and Howlett made a test flight and both piloted the airplane. Howlett testified that this occurred after the lease agreement was executed; that Leeds would not permit him to pilot the airplane until after the lease agreement was signed and Leeds was "sure of the insurance [coverage]". We need not resolve the conflict because our decision is the same whichever person's testimony is accepted.

[3] The lease agreement also provides: "Lessee agrees at all times to keep said airplane in good operative condition, completely airworthy and to make all necessary repairs thereto at its own expense with the sole exception of the regular 1,200 hour complete major engine overhauls which shall be at the cost of lessor. Lessee shall at the termination of this lease, whether as a result of the expiration of the terms or otherwise, shall [sic] deliver possession of said airplane to the lessor at Ft. Lauderdale-Hollywood International Airport, Ft. Lauderdale, Florida, in the same condition as when delivered by the lessor to the lessee, reasonable wear and tear excepted."

Shenandoah's place of business. While the airplane was landing in Roanoke, pilot error or brake failure caused it to "ground loop". The resultant damage was repaired, and the airplane was returned to service on April 8.

A mechanic inspected the airplane several days later to determine why the right brake was inoperative. Discovering that the right brake reservoir was dry, he filled the reservoir, and then tested the brakes. He found no evidence of leakage.

Witnesses testified that the brakes were not "very good" even after the reservoir had been filled, that exhaust fumes could be smelled in the cabin when the cabin heater was operating, that the interior of the cabin was wet after a rain, that lubrication was necessary to remedy binding of flap hinges, flexible cables and controls, and that slide tubes were rusty and should be removed.

Witnesses expressed various opinions about the airplane. A pilot who testified for Shenandoah said he did not consider the airplane airworthy, whereas a pilot who testified for Leeds said he considered it airworthy.

An FAA inspector came to Roanoke on April 8 to investigate the cause of the "ground loop" on March 31. During the investigation, he discovered that by inadvertence the registration certificate issued by the FAA omitted part of the airplane's model designation number. About this error, the inspector said: "We will not ground the airplane, but the owner, if he operates the airplane, is in violation of the regulations. The owner himself grounds the airplane. We have no authority to ground the airplane because the registration isn't proper. . . ."

When Howlett advised Leeds on April 15 of the registration error, Leeds wrote to the FAA requesting that the error be corrected. On April 22 the FAA issued a revised certificate of registration, making the necessary correction. Leeds forwarded the revised certificate to Howlett on April 26.

On May 4 or 5, Howlett flew the airplane to Montgomery, Alabama, with a passenger aboard. While the airplane was taxiing before takeoff on the return trip to Roanoke, the tailwheel would not turn properly. Instead of taking off, Howlett had the airplane repaired by a mechanic, who advised that the airplane was equipped with "the wrong tailwheel". Howlett's passenger, who was unwilling to fly in the airplane again, returned to Roanoke by commercial airline.

Howlett then flew the airplane to Fort Lauderdale, returned it to Leeds, and advised Leeds that he was rescinding the lease. Neither Howlett nor anyone else had previously advised Leeds of any trouble encountered or dissatisfaction with the airplane, other than reporting the error in the certificate of registration.

The commissioner to whom this case was referred reported that because of a mistake of fact, Shenandoah was entitled to rescind the lease agreement and to recover the amount already paid to Leeds. The trial court held that the commissioner should have found Shenandoah entitled to rescind the lease because of constructive fraud, instead of mistake. Otherwise, the court's final decree, from which this appeal was prosecuted, sustained the commissioner's report.

The parties agree that Florida law is controlling, but Shenandoah concedes that "[t]he law in Florida as to constructive fraud in equity is exactly the same as it is in Virginia". So we will apply Virginia law to determine whether the evidence supports a finding of constructive fraud.

"The law is well settled that if one represents as true what is really false, in such a way as to induce a reasonable man to believe it, and the representation is meant to be acted on; and he to whom the representation is made, believing it to be true, acts on it, and in consequence thereof sustains damage, there is such fraud as will support an action for deceit at law, or a bill for rescission of the transaction in equity. Whether the representation is made innocently or knowingly, if acted on, the effect is the same. In the one case the fraud is constructive; in the other it is actual." *Mears* v. *Accomac Banking Co.*, 160 Va. 311, 321, 168 S.E. 740, 743 (1933).

[■ Aside from the registration error, Shenandoah relies on Leeds's representation before the lease was signed that the airplane was in good operative condition, "ready to go". Shenandoah asserts that this representation was false as evidenced by the defects discovered after execution of the lease agreement.

But the parties agreed in the lease agreement that any such representation was not meant to be acted on. Shenandoah acknowledged that the airplane and its equipment "[had] been accepted and found in good, sound and servicable condition and fit for use"; that Shenandoah "accept[ed] said airplane in its present condition".

It is immaterial whether Shenandoah made a reasonable inspection of the airplane before executing the lease. Shenandoah had the op-

portunity to do so and it is equally bound whether or not it availed itself of the opportunity.[4] *See Harris* v. *Dunham,* 203 Va. 760, 768-69, 127 S.E.2d 65, 71 (1962).

■ Shenandoah also claims the right to rescind the lease agreement because of the error in the registration of the airplane. Shenandoah argues that Leeds expressly or impliedly represented that the airplane was properly registered, that Shenandoah relied on the representation, and that the representation was false.

But at no time before the registration error was corrected did Shenandoah assert the right to rescind the lease agreement or even complain that Leeds had made a false representation. On May 4 or 5 when Shenandoah first asserted a right to rescind the lease agreement, the airplane was correctly registered and legally available for Shenandoah's use. Any preexisting right to rescind the lease agreement because of the registration error had been waived.

■ Lastly, Shenandoah contends that it was entitled to rescind the lease agreement because it mistakenly believed that the airplane was in good condition and properly registered. Here Shenandoah substantially repeats its argument based on constructive fraud. To substantiate constructive fraud, Shenandoah asserts that Leeds misrepresented certain facts; to substantiate mistake, Shenandoah asserts that it was mistaken as to the true state of facts.

What we have said about constructive fraud equally disposes of mistake as a ground for rescission in this case. Under the provisions of the lease agreement, Shenandoah assumed responsibility for any mistake about the condition of the airplane. It acknowledged that the airplane was in proper condition when the lease agreement was made and accepted the airplane in its condition at that time. And whether or not the error in registration of the airplane was material, Shenandoah waived that mistake as a ground for rescission by failing to act before the error was corrected.

Because Shenandoah was not entitled to rescind the lease agreement, both the lessee, Shenandoah, and the guarantor, Mrs. Rice, are liable for the amount owing under the lease agreement. The decree is reversed and the case is remanded for the entry of a money decree consistent with this opinion.

*Reversed and remanded.*

---

[4] Shenandoah does not contend that if it had caused an inspection to be made by a competent person before the lease agreement was executed, the inspection would have failed to reveal the alleged defects of which it complains.