# CIRCUIT COURT OF THE CITY OF RICHMOND

Will & Cosby
and Associates, Inc.

v.

Stephen Salomonsky et al.

April 22, 1999

Case No. LF-60-4

BY JUDGE RANDALL G. JOHNSON

This case is before the court on defendants' demurrer. The allegations of the motion for judgment, which on demurrer are taken as true, are that plaintiff entered into a contract with the owner of an apartment complex in Richmond known as the "14th Street Project" to perform general contracting work. Defendants are the architect and the architect's firm who were hired by the owner to render architectural services in connection with the project. Because of defendants' improper actions, plaintiff has not been paid what it is due.

The motion for judgment is in seven counts. Count I alleges a conspiracy between defendants and the owner and/or between defendants and Louis Salomonsky, who is defendant Stephen Salomonsky's father and is also an architect, and/or between defendants and "other persons and entities" to harm plaintiff in its trade, occupation, or business. Count II alleges tortious interference with contract. Count III alleges simple breach of contract. Count IV alleges fraud and misrepresentation. Count V alleges "deceit." Count VI alleges breach of fiduciary duty. And Count VII alleges negligence.

## I. *Conspiracy*

With regard to plaintiff's claim of conspiracy, defendants first point out that the motion for judgment alleges that Louis Salomonsky was "an agent, member, manager, officer, director, and/or employee of" one of the entities that constitutes the owner of the project. Thus, Louis Salomonsky and the owner are, for purposes of plaintiff's conspiracy claim, the same entity. Defendants then argue that as the project's architects, they were actually the agents of the owner. Since an agent cannot conspire with its principal, *see, e.g., Charles E. Brauer Co. v. NationsBank,* 251 Va. 28, 36, 466 S.E.2d 382 (1996); *Fox v. Deese,* 234 Va. 412, 428, 362 S.E.2d 699 (1987), defendants argue that plaintiff's conspiracy count must be dismissed. In this regard, defendants point to language in their contract with the owner requiring defendants to "guard against defects and deficiencies in [plaintiff's] work;" to "review and certify amounts due [plaintiff];" and similar language. Defendants also assert that their contract with the owner stated that the architect "shall have authority to act on behalf of the Owner only to the extent that ... ." It is defendants' argument that these provisions create, or at least are conclusive evidence of, an agency relationship. Defendants' argument is flawed for two reasons.

First, as plaintiff points out, the specific contracts allegedly involved in this case are not yet before the court. While they are referred to in the motion for judgment and would probably be the proper subjects of a motion craving oyer, they cannot be considered on demurrer in the absence of such a motion.

Second, the cases cited by defendants in support of their argument that they were agents of the owner are not decisive. Two of those cases, the ones with holdings most favorable to defendants' argument, are from other jurisdictions and hold that under the usual owner-architect contract, the architect is the owner's agent. *See, e.g., Board of Ed. v. Dobson Const. Co.,* 67 Misc. 1094 1095-96, 325 N.Y.S.2d 826, 827-28 (1971); *Blue Cross & Blue Shield v. W. R. Grace & Co.,* 781 F. Supp. 420, 423-24 (D. S.C. 1991). While one of the two Virginia cases cited by defendants also contains language suggesting an agency relationship between owner and architect, there is no actual holding that such a relationship always exists. In *Valley Co. v. Roland,* 218 Va. 257, 237 S.E.2d 120 (1977), the Court considered a claim by a contractor that it was a third-party beneficiary of a contract between an owner and an architect. In rejecting the claim, the Court held that the contractor was, at most, only an incidental beneficiary of any benefit under the contract and

that such incidental benefit was not sufficient for a third-party beneficiary claim. The court then cited a Florida case to add:

> The theory that a supervising architect acts as agent for the owner also militates against a third party beneficiary approach.

218 Va. at 261, *quoting A. R. Moyer, Inc. v. Graham*, 285 So. 2d 397 (Fla. 1973).

Other than the above quote, there is no discussion anywhere in the opinion of a possible agency relationship between architect and owner, much less a holding that an architect is always the owner's agent.

The other Virginia case cited by defendants, *Blake Const. Co. v. Alley*, 233 Va. 31, 353 S.E.2d 727 (1987), does not discuss agency at all. Instead, the Court, discussing Virginia's "economic loss" rule, simply noted that an "architect's relation to the parties and the work is specified by the parties in their bargained-for agreement." 233 Va. at 35 (*citing Bernard Johnson v. Continental Constructors*, 630 S.W.2d 365, 371 (Tex. Civ. App. 1982)). This is a far cry from holding that architects are agents of owners. In fact, at least one Virginia case clearly shows that this is not always true.

In *Kirk Reid Co. v. Fine*, 205 Va. 778, 139 S.E.2d 829 (1965), a heating and air conditioning contractor sued to recover money he claimed was due as a result of change orders to a contract. His argument was that the changes were approved by the architect and were binding on the owner. The Supreme Court disagreed:

> As has been noted, the contract between the complainant and the defendant provided that Oliver and Smith, the architects, and Hart, the engineer, were to "have general supervision of the work." Under such circumstances, the architect is not, by virtue of his employment, the general agent of the owner for all purposes in the work he is engaged to supervise. His authority is a limited one - defined by the terms of his contract of employment or by the terms of the contract between the owner and the contractor. He has no authority to make alterations in the plans and specifications nor to bind the owner with respect thereto except as provided in the contractual documents.

205 Va. at 782.

Thus, it is clear that whether a particular architect is the agent of a particular owner depends on more than just a general notion of what the typical

architect-owner relationship is. The answer may lie in the parties' contract or in their actions. As our Supreme Court noted in *Murphy v. Holiday Inns, Inc.*, 216 Va. 490, 219 S.E.2d 874 (1975):

> "Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control and consent by the other so to act." Restatement (second) of Agency § 1 (1958).
>
> "It is the element of continuous subjection to the will of the principal which distinguishes the agent from other fiduciaries and the agency agreement from other agreements." *Id.*, comment (b).

216 Va. at 492.

Because the court is limited on demurrer to considering only the allegations of the motion for judgment, it cannot yet be said whether an agency relationship existed here. Accordingly, defendants' demurrer to Count I will be overruled.

## II. *Tortious Interference with Contract*

With regard to Count II: tortious interference with contract, defendants' demurrer is based on two grounds. First, defendants argue that, considering their responsibilities under their contract with the owner, any actions they took which frustrated plaintiff's performance or ability to be paid were privileged and not subject to court challenge by plaintiff. Second, defendants assert that a party cannot tortiously interfere with a contract to which he is a party and that by alleging a three-party contract between plaintiff, defendants, and the owner, plaintiff is precluded from making such a claim against defendants. The court rejects the first argument but partially agrees with the second.

The "privilege" claim made by defendants is, for all practical purposes, identical to the privilege claim asserted and rejected by the Supreme Court in *Maximus, Inc. v. Lockheed Inf. Mgmt. Systems*, 254 Va. 408, 493 S.E.2d 375 (1997). Simply put, the affirmative defense of privilege involves elements which can only be decided after the presentation of evidence, with the burden of proving privilege on the defendant. 254 Va. at 414. It is obvious, then, that such defense cannot prevail on demurrer.

Defendants' second argument with regard to Count II, however, is partially correct. While *CaterCorp, Inc. v. Catering Concepts*, 246 Va. 22, 28, 431 S.E.2d 271 (1993), and *Worrie v. Boze*, 198 Va. 533, 540-41, 95 S.E.2d

192 (1956), hold that a party can be held liable for unlawfully conspiring to breach a contract even if he/she/it is a party to the contract, *Fox v. Deese*, *supra*, and *Chaves v. Johnson*, 230 Va. 112, 335 S.E.2d 97 (1985), make it clear that "[a] person cannot intentionally interfere with his own contract." *Fox v. Deese*, 234 Va. at 427. This is true because the tort of tortious interference with a contract is defined as an intentional and improper interference with the performance of a contract "between another and a third person." *Chaves v. Johnson*, 230 Va. at 120, *quoting* Restatement (Second) Torts § 766 (1977). Here, plaintiff alleges at least two contracts to which it was a party: its original contract with the owner, referred to in the motion for judgment as Agreements A, and two or more change orders with the owner and defendants, referred to as Agreements B. While plaintiff has stated a cause of action with regard to the original contract (Agreements A), it cannot state a cause of action with regard to the change orders to which defendants were a party (Agreements B). Accordingly, defendants' demurrer to Count II will be sustained in part and denied in part.

### III. *Breach of Contract*

Count III of the motion for judgment alleges that defendants breached "the Construction Contracts," previously defined in the motion for judgment as plaintiff's original contract with the owner and the three-party contract already discussed with regard to Count II above. Plaintiff also claims that defendants breached an implied contract of good faith in its dealings with plaintiff and a third-party benefit due plaintiff from defendants' contract with the owner. Since a party cannot breach a contract to which he/she/it is not a party, defendants cannot be liable for breaching plaintiff's contract with the owner. This, of course, does not affect plaintiff's claim for tortious interference with that contract already discussed.

The court also holds that since all of these parties had contracts with each other, no implied contract existed. In *Ward's Equipment v. New Holland N. America*, 254 Va. 379, 493 S.E.2d 516 (1997), the Court said:

> [W]hen parties to a contract create valid and binding rights, an implied covenant of good faith and fair dealing is inapplicable to those rights.

254 Va. at 385.

All of the contracts at issue in this case were express contracts. Any duties imposed on the parties were imposed by an express contract. No implied duty of good faith is involved.

With regard to plaintiff's claim that it was a third-party beneficiary of defendants' contract with the owner and that defendants breached that contract to plaintiff's detriment, the case of *Valley Co. v. Roland*, which was cited in the court's earlier discussion of plaintiff's conspiracy claim, raises serious doubts that such a claim will succeed. Specifically, the Court in that case said:

"Our review of the law suggests to us that supervision generally is undertaken for the benefit of the owner to insure that the construction is proceeding in compliance with the plans and specifications approved by the owner. *In general terms, a contractor is an incidental beneficiary absent clear intent manifested in the owner-architect contract to the contrary.* Exceptions may exist possibly, such as in supervision to insure compliance with safety regulations which would be for the benefit of third party construction workers ... ."

218 Va. at 261 (*quoting A. R. Moyer, Inc. v. Graham, supra*) (emphasis in original).

Then, to leave no doubt about its approval of the foregoing principle, the Court cited *Engle Acoustic & Tile, Inc. v. Grenfell*, 223 So. 2d 613, 620 (Miss. 1969), which said:

"[T]he controlling principle of law here involved is that one not a party to a contract can sue for a breach thereof only when the condition which is alleged to have been broken was placed in the contract for his direct benefit. A mere incidental beneficiary acquires by virtue of the contractual obligation no right against the promisor or the promisee."

218 Va. at 262.

While the above language makes plaintiff's third-party beneficiary claim highly questionable, the court cannot sustain defendants' demurrer because the court does not yet know whether the condition plaintiff must meet, that the allegedly breached provision was "placed in the contract for [its] direct benefit," can be met. This is a question of fact that cannot be reached on demurrer:

> [W]hether a contract was intended for the benefit of a third person [is] generally regarded as one of construction and ... the intention of the parties is determined by the terms of the contract as a whole.

*Valley Co. v. Roland, supra,* 218 Va. 257.

Since the contract at issue is not properly before the court, defendants' demurrer must be overruled.

Lastly, defendants argue that plaintiff's claim concerning the three-party change order cannot go forward because it is not a contract. Again, however, those documents are not properly before the court on demurrer, and taking all of the allegations of the motion for judgment as true, a contract is properly pleaded. Accordingly, plaintiff has stated a cause of action in that regard.

### IV. *Fraud and Misrepresentation*

In Count IV of the motion for judgment, plaintiff claims that defendants made material misrepresentations of fact to the owner about plaintiff's performance and that the owner relied on those misrepresentations to deny payment to plaintiff of what plaintiff was due under plaintiff's contract with the owner. What plaintiff does not claim is that *plaintiff* relied in any way on defendants' misrepresentations. Such failure is fatal.

In *Evaluation Research* Corp. v. *Alequin,* 247 Va. 143, 439 S.E.2d 387 (1994), the Court set out the well-known elements of fraud:

> One who advances a cause of action for actual fraud bears the burden of proving by clear and convincing evidence: (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) *reliance by the party misled,* and (6) resulting damage to the party misled ... . Constructive fraud differs from actual fraud in that the misrepresentation of material fact is not made with the intent to mislead, but is made innocently or negligently although resulting in damage to the one relying on it. ... However, as with actual fraud, the elements of constructive fraud also must be proved by clear and convincing evidence.

247 Va. at 148 (emphasis added; citations omitted).

Since there is no allegation that plaintiff relied on any misrepresentations made by defendants to the owner, the demurrer to Count IV will be sustained.

## V. *Deceit*

Count V of the motion for judgment seeks to state a cause of action for "deceit." While this court believes that a reasonable argument can be made that there is no difference between a cause of action for deceit and a cause of action for fraud, Virginia appears to recognize two separate causes of action. In *Mears v. Accomac Banking Co.*, 160 Va. 311, 168 S.E. 740 (1933), the Court said:

> The law is well settled that if one represents as true what is really false, in such a way as to induce a reasonable man to believe it, and the representation is meant to be acted on; and he to whom the representation is made, believing it to be true, acts on it, and in consequence thereof sustains damage, there is such fraud *as will support an action for deceit at law*, or a bill for rescission of the transaction in equity. Whether the representation is made innocently or knowingly, if acted on, the effect is the same. In the one case the fraud is constructive; in the other it is actual.

160 Va. at 321 (emphasis added). *See also Leeds v. Mundy*, 212 Va. 475, 478, 184 S.E.2d 751 (1971); *Jefferson Stand. Ins. Co. v. Hedrick*, 181 Va. 824, 833-34, 27 S.E.2d 198 (1943); *Packard Norfolk, Inc. v. Miller*, 198 Va. 557, 565-66, 95 S.E.2d 207 (1956).

In spite of such apparent recognition, defendants' demurrer to plaintiff's deceit count will be sustained, and it will be sustained for the same reason that the demurrer to the fraud count is sustained: that plaintiff's facts cannot support an allegation that there was reliance by plaintiff on defendants' misrepresentations.

Plaintiff's claim of deceit is based on two indemnity agreements, one oral and one written, allegedly entered into between defendants and the owner. Those agreements, according to plaintiff, recognized the owner's acceptance of plaintiff's work, both under plaintiff's original contract and under the several change orders that came into being. Defendants were guilty of deceit, says plaintiff, because at the same time the indemnity agreements were entered into, defendants were telling the owner that plaintiff had not performed under the contracts and should not be paid. Those allegations raise two interesting points. First, as a general matter, the court wonders how in the world plaintiff is going to prove that defendants "deceptively" entered into the subject agreements with the owner which said that plaintiff had fully performed its

work while at the same time falsely telling the owner that plaintiff's work was so faulty as to warrant withholding payments under the contracts. While Rule 1:4(k) of the Rules of the Supreme Court of Virginia allows a party to plead separate claims "regardless of consistency," these claims by plaintiff are rather strange.

More important for the issue at hand, however, is the fact that even if the indemnification agreements were somehow the result of defendants' deceit, there is no way that plaintiff could have relied on them to plaintiff's detriment. The agreements were entered into after plaintiff claims to have completed its performance, so there was nothing else plaintiff could have done that is relevant to this action. Since detrimental reliance is an essential element of Virginia's apparent cause of action for deceit, just as it is an essential element of a cause of action for fraud, defendant's demurrer to plaintiff's deceit claim will be sustained.

## VI. *Breach of Fiduciary Duty*

Count VI of the motion for judgment seeks to state a cause of action for defendants' breach of their fiduciary duty "to act in the utmost good faith in the administration of the Construction Contracts between Plaintiff and Owner." Other than a reference to the general regulations of the Board of Architects, however, plaintiff does not state how a fiduciary duty arose between plaintiff and defendants. All of the parties to whatever contracts are involved in this action were competent, experienced professionals. Whatever obligations existed, whether those obligations were to look after the interests of another party or otherwise, are contained in the contracts. While it is hard to imagine that any such contract created a fiduciary duty upon defendants in favor of plaintiff, that decision cannot be made at this stage of the proceedings. At the very least, the relevant contracts must be considered. Since they are not a part of plaintiff's pleadings, they cannot be considered on demurrer. The demurrer to this count will be overruled.

## VII. *Count VII*

Plaintiff's final count is for negligence. Defendants' demurrer to that count is based on Virginia's "economic loss" rule. That rule generally provides that a party may not recover in a negligence action purely economic losses that occurred as a result of a breach of contract. As stated in *Sensenbrenner v. Rust, Orling & Neale*, 236 Va. 419, 374 S.E.2d 55 (1988):

The law of torts is well equipped to offer redress for losses suffered by reason of a "breach of some duty imposed by law to protect the broad interests of social policy." *Kamlar*, 224 Va. at 706, 299 S.E.2d at 517. Tort law is not designed, however, to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement. That type of compensation necessitates an analysis of the damages which were within the contemplation of the parties when framing their agreement. It remains the particular province of the law of contracts.

236 Va. at 425.[1]

The rule applies to claims brought by third-party beneficiaries. *Copenhaver v. Rogers*, 238 Va. 361, 365-66, 384 S.E.2d 593 (1989). Thus, any claim by plaintiff that defendants negligently breached defendants' contract with the owner — that is, the contract of which plaintiff claims to be a third-party beneficiary in Count III of the motion for judgment — cannot go forward, and to that extent defendants' demurrer to plaintiff's negligence claim is sustained.

The economic loss rule is not, however, absolute. Where there is privity of contract, a negligence cause of action can proceed:

"[W]hen privity exists, economic losses may be recovered under a negligence theory."

*Ward v. Ernst & Young*, 246 Va. 317, 325, 435 S.E.2d 628 (1993).

Consequently, plaintiff's negligence claim based on the three-party contract to which plaintiff was a party states a cause of action even in the face of the economic loss rule, and to that extent, defendants' demurrer is overruled.

### Conclusion

In summary, defendants' demurrer is sustained with regard to Counts IV and V of the motion for judgment. Defendants' demurrer is also sustained with regard to plaintiff's claim in Count II of the motion for judgment that

---

[1] The case referred to in the quote is *Kamlar Corp. v. Haley*, 224 Va. 699, 299 S.E.2d 514 (1983).

defendants tortiously interfered with the three-party contract between plaintiff, defendants, and the owner; plaintiff's claims in Count III of the motion for judgment that defendants breached plaintiff's contract with the owner and that defendants breached an implied contract or covenant of good faith; and plaintiff's negligence claim in Count VII of the motion for judgment relating to defendants' contract with the owner. Otherwise, the demurrer is overruled.

Finally, the court notes that plaintiff has made a general motion to amend its motion for judgment "[i]f the Court sustains defendants' demurrer on any Count or finds the Complaint requires further clarification or detail." Plaintiff's Opposition to Demurrer, at 30. Considering all of the allegations of the motion for judgment and the relevant statutory and case law, however, the court concludes that no amendments are appropriate. Accordingly, to the extent that defendants' demurrer is sustained, it is sustained without leave to amend.