Present: Carrico, C.J., Compton, Lacy, Hassell, Keenan, and Kinser, JJ., and Whiting, Senior Justice

MAXIMUS, INC.

v.    Record No. 962519    OPINION BY JUSTICE ELIZABETH B. LACY
                                    October 31, 1997
LOCKHEED INFORMATION MANAGEMENT
SYSTEMS COMPANY, INC., ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Randall G. Johnson, Judge

This appeal requires us to determine the elements required to establish a prima facie case of tortious interference with contract expectancy in Virginia.

I.

The instant case arose out of a dispute between Maximus, Inc., (Maximus) and Lockheed Information Management Systems Company, Inc., (Lockheed) over bids to privatize two child support enforcement offices in Northern Virginia.

In November 1994, the Virginia Department of Social Services (DSS) released a Request for Proposals to privatize the two child support offices pursuant to the Virginia Public Procurement Act, Code §§ 11-35 through -80. Maximus and Lockheed were the only two bidders. To evaluate the bids, DSS created a selection panel composed of five state employees. The panel heard oral testimony, reviewed and scored the proposals, and issued a Notice of Intent to Award the contract to Maximus dated April 13, 1995.

On April 25, 1995, pursuant to Code § 11-66, Lockheed filed a formal protest of DSS's decision to award the contract to Maximus. In its protest, Lockheed alleged that two members of the evaluation panel had undisclosed conflicts of interest which

interfered with their objectivity and compromised the integrity of the evaluation process.[1]  State officials conducted an investigation and canceled the Notice of Intent to Award the contract to Maximus.

On February 5, 1996, Maximus filed this action against Lockheed.  In its motion for judgment, Maximus alleged that Lockheed had tortiously interfered with its contract expectancy with DSS.[2]  Maximus claimed that Lockheed knew, or had reason to know, that the allegations advanced in its formal protest were false, that the false allegations were intentionally and selectively presented to create an appearance of impropriety, and that the protest was calculated to wrongfully interfere with Maximus' contractual relationship with DSS so that DSS would award the contract to Lockheed instead.  Lockheed filed a demurrer, asserting in part that it filed its protest pursuant to a statutory right and was, therefore, entitled to absolute immunity or privilege based on both the protections afforded government petitioners established in Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961), and United Mine Workers of America v. Pennington, 381 U.S. 657 (1965), and the principle that statements made within a judicial

_____

[1]In its protest, Lockheed alleged that the panel's decision was arbitrary and capricious on two other grounds which are not relevant to this appeal.

[2] Maximus also alleged conspiracy, but that claim is not at issue in this appeal.

or quasi-judicial proceeding are protected.  However, that portion of the demurrer was denied by the trial court.[3]

Following the conclusion of Maximus' case in chief in the subsequent jury trial, Lockheed moved to strike the evidence. The trial court determined that Lockheed had a "qualified privilege" and that Maximus was therefore required to show malice or "that the improper conduct is so egregious as to override the qualified privilege" in order to reach the jury.  Concluding that Maximus had failed to meet this evidentiary burden, the trial court sustained the motion to strike and entered judgment in favor of Lockheed.

Maximus filed an appeal claiming that it had presented sufficient evidence to establish a prima facie case of tortious interference with contract expectancy, and that the trial court erred by striking the evidence for failure to show malice as an element of the cause of action.  Because we conclude that the trial court did not apply the correct standard for determining whether Maximus had established a prima facie case for tortious interference with contract expectancy, we will reverse the judgment of the trial court and remand the case for further proceedings.

## II.

In reaching its decision, the trial court considered the law

---

[3] Lockheed did not assign cross-error to the denial of its demurrer; therefore, the issues in the demurrer are not before us.

of defamation analogous to the law of interference with business relationships and applied principles based on that analogy. The trial court first concluded that Lockheed was entitled to a "qualified privilege."[4] According to the trial court, the existence of this privilege required the plaintiff to satisfy a "different burden," similar to the additional burden of showing malice placed upon a plaintiff in a defamation action when a qualified privilege is established. The trial court concluded that in this case, the "different burden" should be a "showing of malice or a showing that the improper conduct is so egregious as to override the qualified privilege."

The trial court's use of the defamation analogy was based on Chaves v. Johnson, 230 Va. 112, 121, 335 S.E.2d 97, 103 (1985), in which we recognized a similarity between the affirmative defense of justification or privilege in a tortious interference with contract suit and the defense of qualified privilege in a defamation suit. The similarity, however, arises from the circumstances in which the offending words, or in this context, the offending conduct, occurs. In certain circumstances, the interests of society require that the question of liability be resolved by balancing the rights involved, acknowledging that this balancing process may shield a party from liability even though he engaged in the offensive acts. For

---

[4] The record does not reflect the trial court's basis for this determination on the specific nature of the qualified privilege.

4

example, in the defamation context, an actor has an absolute privilege and is not liable for defamatory statements made in the course of a judicial proceeding. Massey v. Jones, 182 Va. 200, 204, 28 S.E.2d 623, 626 (1944); Penick v. Ratcliffe, 149 Va. 618, 627, 140 S.E. 664, 667 (1927). In the context of causes of action involving interference with a business relationship, freedom of action is balanced against protection of the business relationship involved to determine whether the affirmative defense of justification or privilege precludes liability for actions which would otherwise be culpable. Chaves, 230 Va. at 121, 335 S.E.2d at 103.

Liability determinations in both instances involve balancing of interests; however, this similarity neither suggests nor demands that the specific requirements for imposition of liability in one cause of action must be applied to the other cause of action. Other than acknowledging the similarity, we have not extended the defamation law construct to business torts and, for the reasons expressed below, we decline to extend it to the tortious interference with a contract expectancy cause of action at issue here.

We have already rejected imposing an additional evidentiary burden in an action for intentional interference with a contract. In Chaves, we determined that malice was not an element of the cause of action and also specifically recognized certain affirmative defenses of privilege and justification available to

5

defendants.  Id. at 120–21, 335 S.E.2d at 102–03.  Thus, by definition Chaves eliminated any requirement that the plaintiff show malice, even if the defendant establishes an affirmative defense.

In Duggin v. Adams, 234 Va. 221, 360 S.E.2d 832 (1987), we considered the elements of a cause of action for interference with a contract terminable at will.  We found that not all business relationships are entitled to the same level of protection and concluded that a contract not terminable at will was entitled to more protection than a contract terminable at will.  Id. at 226, 360 S.E.2d at 836.  Reflecting this distinction, we held that one of the elements of a cause of action for tortious interference with a contract terminable at will is that the acts or methods used for the interference must themselves be "improper."[5]  Id. at 226–27, 360 S.E.2d at 836.  As in Chaves, Duggin acknowledged the availability of certain affirmative defenses.  Id. at 229, 360 S.E.2d at 838.  Other than the "improper methods" requirement, no additional elements were imposed to establish a prima facie case, even when an affirmative defense was asserted.

Our prior cases, however, have not addressed the level of protection or the elements of a cause of action attaching to the business interest at issue in this case, a contract expectancy.

---

[5] Not all jurisdictions follow this approach.  See Restatement (Second) of Torts § 767 cmt. k (1977).

6

The Restatement (Second) of Torts § 766B (1977) describes the cause of action as follows:

One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of

(a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or

(b) preventing the other from acquiring or continuing the prospective relation.

The Restatement notes that a contract terminable at will is "closely analogous" to the business relationship described in this section because both are based on an interest in a future relationship with no legal assurance of such future relationship. Restatement (Second) of Torts § 766 cmt. g (1977). We agree.

The virtual identity of interests and the legal ability to enforce those interests in a contract terminable at will and a contract or business expectancy lead to the conclusion that the level of protection afforded, and the elements of the cause of action, should also be the same. There is no basis to impose an additional requirement to differentiate the protection afforded to a contract terminable at will and to a contract or business expectancy.

Thus, to establish a prima facie cause of action in this case, Maximus was required to show that: (1) it had a contract expectancy; (2) Lockheed knew of the expectancy; (3) Lockheed intentionally interfered with the expectancy; (4) Lockheed used improper means or methods to interfere with the expectancy; and

7

(5) Maximus suffered a loss as a result of Lockheed's disruption of the contract expectancy. Maximus was not required to show malice or any other egregious conduct.

The trial court stated at the close of Maximus' case in chief that "if this were the end of the case," there was enough evidence to submit the issue "whether the conduct of the defendants was improper" to the jury. While it is not clear whether this statement referred to the "improper methods" element of the cause of action or the ultimate issue of liability, either construction shows that the trial court struck the evidence based on its belief that Maximus had to produce additional evidence to establish a prima facie case. Accordingly, the trial court erred in sustaining Lockheed's motion to strike.[6]

Nevertheless, Lockheed argues that its motion to strike was properly granted because Maximus did not show that Lockheed engaged in "improper acts," one of the elements of a prima facie case. Lockheed asserts that to qualify as "improper methods," the actions must be illegal or independently tortious, and Maximus failed to show that it engaged in such acts. We reject Lockheed's interpretation of "improper methods."

While we have identified actions as improper which were also independently tortious or illegal, Duggin, 234 Va. at 227-28, 360 S.E.2d at 836-37, we have also identified actions as

---

[6] In light of this holding, we need not address the trial court's finding that Lockheed was entitled to a qualified privilege.

8

improper which are not themselves tortious or illegal, such as unfair competition or unethical conduct. Id. at 228, 360 S.E.2d at 837. Nor does the name given the cause of action impart a requirement of independently tortious acts. "Tortious interference" means only that the interference was intentional and improper under the circumstances, not that the "improper methods" used were inherently illegal or tortious.[7]

Moreover, to adopt Lockheed's interpretation of "improper methods" would either negate the ability of a defendant to use some of the recognized affirmative defenses or shift the burden of proving an element of those defenses to the plaintiff. Chaves referred to the affirmative defense of justification or privilege based on five grounds discussed in the Restatement (Second) of Torts §§ 768-72 (1977). Chaves, 230 Va. at 121, 335 S.E.2d at 103. Four of these, including competition, the ground relied on by Lockheed here, require the defendant to prove that it did not employ "wrongful means." Restatement (Second) of Torts §§ 768-71 (1977). None of our cases suggest that the affirmative defense grounds recognized in Chaves are different when raised in an action for interference with a contract terminable at will or

---

[7] To limit improper methods as suggested by Lockheed returns the cause of action to its status in the nineteenth century, when recovery for interference with contract expectancy required that the conduct utilized by the interferer be "essentially tortious in nature." That requirement was eliminated in 1893, when liability for this cause of action was extended to circumstances where the methods used were not themselves tortious. Temperton v. Russell [1893] 1 Q.B. 715 (Eng.).

with a business or contract expectancy.  While plaintiffs in these actions must show that the methods of interference were improper, defendants asserting certain affirmative defenses must prove that those methods were not "wrongful."  The plaintiff, of course, retains the burden of persuasion on the ultimate question:  whether the defendant intentionally and improperly, in other words tortiously, interfered with the plaintiff's business relationship causing loss to the plaintiff.  See Restatement (Second) of Torts § 767 (1977); Duggin, 234 Va. at 226-27, 360 S.E.2d at 836.

Accordingly, for the above reasons, we will reverse the judgment of the trial court and remand the case for further proceedings consistent with this opinion.

Reversed and remanded.