# CIRCUIT COURT OF THE CITY OF NORFOLK

Woodbury Construction Co.

v.

Commercial Cash Flow, L.L.C.,
t/a Beach Commercial Finance

June 11, 2001

Case No. (Law) L00-2865

BY JUDGE MARC JACOBSON

Plaintiff Woodbury Construction Co. is a general contractor that entered into certain subcontracting agreements with Falcon Corporation, a subcontractor. Falcon and Defendant Commercial Cash Flow, L.L.C. (Commercial) entered into an agreement wherein Falcon agreed to sell invoices resulting from its contracts with Woodbury to Commercial in order immediately to obtain discounted payment. *See* Motion for Judgment (Motion), ¶ 11. Woodbury alleges that the Agreement was an assignment by Commercial of Falcon's obligations to Woodbury under the contracts through which the invoices were generated. *See* Motion, ¶ 14. Consequently, Woodbury alleges that under the Agreement with Falcon, Commercial was obligated to fulfill Falcon's obligations under its contracts with Woodbury, including making payments to certain subcontractors. *See* Motion, ¶ 14. Woodbury has brought this action alleging that the failure of Commercial to do so constitutes a breach of contract and tortious interference with contract.

Commercial has filed a Demurrer to the Motion, arguing that there was and is no contract between Woodbury and Commercial, and that the sale of Falcon's invoices to Commercial was not an assignment of rights or a delegation of duties. *See* Demurrer, ¶¶ 1, 2. Commercial also argues that the purchase of invoices cannot constitute tortious interference and is a "garden-variety" commercial sales transaction. *See* Demurrer, ¶ 3. Commercial further argues that since it paid Falcon under the Agreement for the invoices, Falcon

could have used those funds to pay its subcontractors, but allegedly did not. *See* Demurrer, ¶ 5. Commercial argues that since the facts that support breach of contract are inconsistent with tortious interference, the tortious interference claim must fail. *See* Demurrer, ¶ 4.

In Defendant's Brief in Support of Demurrer (Commercial's Brief), Commercial argues that since no original writing exists between Woodbury and Commercial, Woodbury's breach of contract claim fails. Commercial alleges that no term in the Agreement between Falcon and Commercial allows or suggests assumption, and in fact, the Agreement specifically states otherwise in Section 9.28. *See* Commercial's Brief at 5.

Woodbury, in its Brief in Opposition to Demurrer (Woodbury's Brief), argues that it is sufficient to sustain a breach of contract claim to allege that Falcon assigned the contracts in question to Commercial, and that Commercial refused to fulfill Falcon's obligations. The Agreement allegedly states that Falcon was "assigning" invoices to Commercial, which Woodbury argues is evidence that a general assignment was intended by the parties and, in such event, Commercial would be obligated in every way that Falcon was under the initial agreement. Woodbury argues that the disclaimer provision applies only to Falcon's construction work to be done on the projects, and not to the remaining payment obligations. *See* Woodbury's Brief.

In Virginia, a demurrer tests the sufficiency of factual allegations to determine whether a motion for judgment states a cause of action. *Fun v. Virginia Military Inst.*, 245 Va. 249, 252, 427 S.E.2d 181, 183 (1993). A demurrer "admits the truth of all material facts that are properly pleaded, facts which are impliedly alleged, and facts which may be fairly and justly inferred from the alleged facts." *Delk v. Columbia/HCA Healthcare Corp.*, 259 Va. 125, 523 S.E.2d 826, 829 (2000) (quoting *Cox Cable Hampton Roads, Inc. v. City of Norfolk*, 242 Va. 394, 397, 410 S.E.2d 652, 653 (1991)).

Under the Rules of the Supreme Court, a pleading "shall state the facts on which the party relies in numbered paragraphs, and it shall be sufficient if it clearly informs the opposite party of the true nature of the claim or defense." Sup. Ct. R. 1:4(d). On demurrer, a court may consider the substantive allegations of the pleading as well as any accompanying exhibit mentioned in the pleading. *Flippo v. F & L Land Co.*, 241 Va. 15, 17, 400 S.E.2d 156 (1991). Further, the Virginia Supreme Court has cautioned the trial courts against incorrectly short-circuiting litigation at the pretrial level by deciding the dispute without permitting the parties to reach a trial on the merits. *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 431 S.E.2d 277 (1993 ). In deciding whether or not Woodbury has stated a cause of action or facts upon which relief can be granted, this Court must accept as true all facts

alleged and reasonable inferences drawn from Woodbury's Motion for Judgment.

In order to sustain a breach of contract claim under a theory of assignment, Woodbury must allege that there was some contractual relationship between Woodbury and another party and that the third party transferred that contractual property right to Commercial. Such an assignment is, in essence, a contract itself and requires an offer, acceptance, and consideration to be valid. *See* Michie's Jurisprudence, *Assignments*, § 2, p. 244.

When a party assumes a contract of another, the party makes it his own contract and the party becomes accountable for the other's responsibilities under that contract. *See Economic Water Heating Corp. v. Dillon Supply Co.,* 156 Va. 597, 159 S.E.2d 78 (1931). Thus, once it is proved that an assignment has been made, it could be argued that a party may recover for the original contract against the entity to which the contract has been assigned.

In the instant case, Woodbury has alleged that it had several written contracts with Falcon, and has provided the Court with copies of those contracts. *See* Motion. Additionally, Woodbury has alleged in its Motion that Commercial was assigned those contracts through the invoice purchase Agreement, making Commercial liable for Falcon's obligations under the original contracts. *See* Motion. As Woodbury has pleaded that Falcon and Defendant Commercial intended to assign the contracts, Plaintiff may attempt to prove this and the effect of such alleged assignment(s), if any.

In order to sustain a claim of tortious interference with contract, Woodbury must allege certain elements:

the existence of a valid contractual relationship or business expectancy, knowledge of the relationship or expectancy on the part of the alleged tortfeasor, intentional interference inducing or causing a breach or termination of the relationship or expectancy, and damage resulting to the party claiming disruption of the relationship or expectancy.

*CaterCorp, Inc. v. Catering Concepts, Inc.,* 431 S.E.2d 277, 281, 246 Va. 22, 28 (1993). In contracts such as those alleged to be at issue in the instant case where the liabilities of each party are not terminable at will, it is not necessarily a requirement to prove malice, ill will, or criminal or otherwise tortious act by Commercial. *See Maximus, Inc. v. Lockheed Information Management Systems Co.,* 254 Va. 408, 412, 493 S.E.2d 375, 377 (1997), *citing Chaves v. Johnson,* 230 Va. 112, 120-21, 335 S.E.2d 97, 102-03 (1985)

("In *Chaves*, we determined that malice was not an element of the cause of action.").

In the instant case, Woodbury has alleged that Commercial's purchase of the invoices and attendant failure to pay Falcon's subcontractors "induced Falcon to breach its obligations to [Woodbury] under the subcontracts." *See* Motion, ¶ 22. Woodbury also alleges that this interference was "intentional and willful and accomplished using improper means and methods," and that it resulted in Woodbury's damages. *See* Motion, ¶¶ 23, 25. Commercial alleges that the tortious interference claim contradicts the breach of contract claim. Woodbury has also alleged that Commercial breached the contract(s) assigned, while at the same time allegedly interfered with the original contract(s) liabilities undertaken by Falcon. Woodbury is entitled to plead alternative theories of its case.

At this juncture, based upon the pleadings, Commercial's Demurrer is overruled at this time.