**FILTROIL, N.A., INC.,**
Plaintiff–Appellee,

v.

John D. MAUPIN and Driveline
Specialty, Inc., Defendants–
Appellants.

No. 01–1072.

United States Court of Appeals,
Federal Circuit.

DECIDED: Sept. 7, 2001.

Rehearing Denied Oct. 17, 2001.

Before MAYER, RADER, and SCHALL, Circuit Judges.

Opinion for the court filed by Circuit Judge RADER. Chief Judge MAYER dissents.

RADER, Circuit Judge.

After a bench trial, the United States District Court for the Western District of Virginia held that Mr. John D. Maupin and his company, Driveline Specialty, Inc. (collectively, Driveline), had tortiously interfered with Filtroil, N.A., Inc.'s business expectancies. For that reason, the trial court issued a permanent injunction against Driveline. The district court also held that the case was exceptional and awarded Filtroil attorney fees under 35 U.S.C. § 285 (1994). Because the district court clearly erred in finding the case exceptional and in finding liability under the tortious interference claim, this court *reverses* the district court's judgment and *vacates* the permanent injunction.

## I.

Filtroil manufactures and distributes oil filters. In 1986, Filtroil entered into a twenty-year manufacturing agreement with Al–Flow Company, Ltd., a Japanese company, under which Al–Flow agreed to produce oil filters for Filtroil. Triple R Overseas Corporation and its president, Mr. Robert S. Iki, were both parties to the 1986 agreement. Moreover Al–Flow appointed Triple R as its liaison to Filtroil under the agreement. In 1987, Al–Flow applied for a United States patent for filters covered by the agreement in the name of its president, Mr. Yuzuru Nakashima, and an employee, Mr. Kiyomi Yamamoto. While the application was pending, Al–

Flow went bankrupt. The patent issued as United States Patent No. 4,935,135 (the '135 patent) on June 19, 1990. Al–Flow offered to sell the '135 patent to Filtroil, but Filtroil rejected the offer.

In response to Al–Flow's difficulties, Filtroil sent its employee, Mr. Maupin, to Japan in 1990. At that time, Mr. Iki was still acting as liaison between Filtroil and its Japanese suppliers. However, Mr. Iki was then working through Robyn International, Ltd., rather than Triple R. Additionally, other companies had replaced Al–Flow in supplying filters to Filtroil, including Yuki Engineering, whose president was Mr. Yamamoto.

While in Japan, Mr. Maupin asked Mr. Iki and Mr. Nakashima about the status of the '135 patent. In September 1990, after returning to the United States, Mr. Maupin sent letters to Mr. Iki and Mr. Nakashima offering to buy the '135 patent. The letter to Mr. Nakashima included a signature line for Mr. Nakashima's acceptance and blank lines for the inclusion of bank information to be used for payment. In the letter, Mr. Maupin agreed to pay the dollar equivalent of Y2,250,000 to an account indicated by Mr. Nakashima. In response, Mr. Nakashima signed and dated the letter and designated a Robyn International bank account. The letter to Mr. Iki indicated that Mr. Maupin had completed payment to Mr. Nakashima and that he was including a check for $4,414.70 (equal to Y750,000 at the exchange rate on September 12, 1990). The check was cashed. Thus, Mr. Maupin paid approximately $20,000 for the '135 patent.

In October 1991, Mr. Maupin submitted to the United States Patent and Trademark Office (PTO) a document that he claimed was an assignment from Al–Flow, dated August 9, 1991 (the August 1991 document). The August 1991 document included a likeness of Mr. Iki's signature, which Mr. Maupin had photocopied onto the document. Mr. Maupin testified that he had approached Mr. Iki and requested his assistance in perfecting title to the '135 patent. Mr. Iki told Mr. Maupin that he could not help him, but that Mr. Maupin should do whatever he had to do because he had paid for the patent. Mr. Maupin further testified that he believed he was acting under Mr. Iki's authorization when he photocopied the signature onto the purported assignment.

Mr. Maupin had also obtained another document in which Robyn International appeared to assign its rights to the '135 patent to Mr. Maupin (the Robyn–to–Maupin document). Mr. Iki had signed this April 1991 document. Apparently, in 1988 Mr. Nakashima had executed a document on behalf of Al–Flow to give Robyn International exclusive rights to the '135 patent outside Japan (the Al–Flow–to–Robyn document).

Mr. Maupin later resigned from Filtroil and took steps to enforce the '135 patent against Filtroil and its customers. In January 1997, Filtroil filed a declaratory judgment action against Driveline. In response, Driveline filed a counterclaim against Filtroil, alleging infringement of the '135 patent. Additionally, on July 18, 1997, Mr. Maupin sent letters to Filtroil customers accusing them of patent infringement and suggesting that Mr. Maupin could supply oil filters to them. Soon thereafter, in September 1997, the district court entered a preliminary injunction against Driveline prohibiting it from marketing or enforcing its alleged rights in the '135 patent.

In January 1998, the district court entered summary judgment for Filtroil on the declaratory judgment and patent infringement claims, holding that Driveline lacked valid title to the patent because it had not presented adequate proof that

the '135 patent had been assigned to Mr. Maupin. *Filtroil, N.A., Inc. v. Maupin,* No. 97–0007–C, 1999 WL 33453144, 1998 U.S. Dist. LEXIS 22998, at *3 (W.D.Va. April 26, 1999). The court also held the patent invalid under the on-sale bar and further held it unenforceable because of Mr. Maupin's "inequitable conduct" in affixing the photocopied signature on the August 1991 document without authority to do so. *Id.* Finally, the court entered a permanent injunction (the January 1998 injunction), prohibiting Driveline from marketing or enforcing its alleged rights in the '135 patent. *Id.* at *4–*6.

On appeal, this court affirmed the district court's ruling that Driveline had not shown that the patent had been validly assigned to Mr. Maupin. *Filtroil, N.A., Inc. v. Maupin,* 178 F.3d 1310 (table), No. 98–1212, 1998 U.S.App. LEXIS 30820, at * 8–*9 (Fed.Cir. Dec. 3, 1998). Driveline did not argue that the August 1991 document was a valid assignment. Rather, it argued that Mr. Nakashima's acceptance of Mr. Maupin's offer was a valid assignment. *Id.* at *6. This court held that Mr. Nakashima's acceptance was not a valid assignment. *Id.* at *6–*7. This court also rejected Driveline's argument that Mr. Maupin had acquired title via Robyn International. In fact, the record showed that Robyn international had been liquidated and Mr. Iki deleted as a director before the date of the Robyn–to–Maupin document. *Id.* at *7–*8. Thus, this court upheld the January 1998 injunction. This court's opinion noted, however, that "Driveline is free to request a modification of the injunction if it should obtain rights in the '135 patent in the future." *Id.* at * 11. At the request of the parties, this court "vacate[d] the district court's judgment on [invalidity and unenforceability] without addressing the merits." *Id.* at *9.

Mr. Maupin then obtained a new purported assignment of the patent from Al-Flow with Mr. Nakashima's signature, dated September 12, 1998 (the September 1998 document), which he submitted to the PTO for recording. Driveline then asked the district court to modify or terminate the January 1998 injunction based on the September 1998 document. The district court denied the motion because Driveline had not produced sufficient evidence to support the authenticity of the September 1998 document. *Filtroil, N.A., Inc. v. Maupin,* No. 97CV0007, 1999 WL 33438001, 1999 U.S. Dist. LEXIS 22202, at *2–*6 (W.D.Va. Mar. 5, 1999). The district court later ruled that Mr. Maupin violated the January 1998 injunction by submitting the September 1998 document to the PTO without first obtaining permission from the court. The court ordered Mr. Maupin to withdraw the recording, if possible, and to pay the attorney fees Filtroil incurred in connection with its ruling that Mr. Maupin violated the injunction. On appeal, this court affirmed the district court's refusal to modify the January 1998 injunction, but reversed the district court's determination that Mr. Maupin had violated the injunction. This court noted that the injunction did not prohibit Mr. Maupin from recording future assignments. *Filtroil, N.A., Inc. v. Maupin,* Nos. 99–1361, 99–1387, 99–1418, 2000 WL 33544088, 2000 U.S.App. LEXIS 5759 (Fed Cir. Mar. 30, 2000).

Filtroil then amended its complaint to allege that Driveline had tortiously interfered with Filtroil's business relationships. In June 2000, Mr. Maupin again sent letters to Filtroil customers stating that he had now obtained an assignment from Al-Flow and offered to assist them in marketing the filters. After a bench trial, the district court upheld Filtroil's tortious interference claim and entered a permanent injunction against Driveline (October 2000

injunction). The district court also awarded Filtroil attorney fees because it found that the case was exceptional. In so holding, the district court relied on the June 2000 letters in addition to other evidence that showed Driveline's efforts to enforce the '135 patent without a valid title. Driveline appeals. This court has jurisdiction under 28 U.S.C. § 1295(a)(1) (1994).

## II.

This court reviews for clear error the district court's findings of fact, including its finding that the case is exceptional. *Reactive Metals & Alloys Corp. v. ESM, Inc.*, 769 F.2d 1578, 1583, 226 USPQ 821, 824 (Fed.Cir.1985). The underlying finding of bad faith conduct by a party is also factual. *Id.* at 1582–83. Likewise, in *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1336–37, 47 USPQ2d 1769, 1782 (Fed.Cir.1998), *overruled on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1359, 50 USPQ2d 1672, 1674–75 (1999), this court required a finding of bad faith before imposing liabilities for asserting a patent in the marketplace. A finding is clearly erroneous when, despite some supporting evidence, "the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948). This court reviews the district court's legal conclusions, such as the standard for inequitable conduct, without deference. *See Reactive Metals*, 769 F.2d at 1583 ("[W]here the basis for the award is inequitable conduct before the PTO, this court must ... be satisfied that the correct *legal* standard was applied ...." (emphasis in original)).

■ The district court found that Driveline tortiously interfered with Filtroil's business relationships. The parties agree that the law of Virginia applies to the tortious interference claim. Under Virginia law, Filtroil must show the following:

> (1) it had a contract expectancy, (2) [Driveline] knew of the expectancy, (3) [Driveline] intentionally interfered with the expectancy, (4) [Driveline] used improper means or methods to interfere with the expectancy, and (5) [Filtroil] suffered a loss as a result of [Driveline's] disruption of the contract expectancy.

*Maximus, Inc. v. Lockheed Info. Mgmt. Sys. Co.*, 254 Va. 408, 493 S.E.2d 375, 378 (1997).

■ In *Hunter Douglas*, this court held that the federal patent laws preempt state torts that impose "liability for publicizing a patent in the marketplace unless the plaintiff can show that the patentholder acted in bad faith." 153 F.3d at 1336. Without proof of the patent owner's bad faith, the case fails on the merits even if such conduct is not a required element of the state tort. *Id.* at 1336–37. The district court based its tortious interference findings on Mr. Maupin's conduct in asserting that Filtroil's customers were infringing the '135 patent when he could not show valid title to the patent. In other words, the district court faulted Mr. Maupin's conduct of "publicizing a patent in the marketplace." *Id.* at 1336. Accordingly, as explained in *Hunter Douglas*, federal patent law imposes a sixth element for Filtroil's tortious interference claim, namely, bad faith conduct in publicizing the '135 patent.

Specifically, the district court found Mr. Maupin's conduct unethical, repeated, vexatious, redundant, duplicative, and false. These findings do not explicitly include a finding that Mr. Maupin publicized the patent in bad faith. To the contrary, the district court apparently found that Mr. Maupin himself believed he owned the pat-

ent, even if no one else believed he did. The district court analogized Mr. Maupin's conduct to a crusade: "[I]t can appear to the person conducting the crusade to be the right thing, but to everyone looking at it, it can be an abomination."

Indeed, the circumstances surrounding the purported assignments show that Mr. Maupin had a good faith belief that he rightfully owned the patent. He paid approximately $20,000 for the patent to Mr. Iki and Mr. Nakashima, who apparently had authority to convey the patent rights on behalf of Al–Flow and Robyn International. In the letter to Mr. Nakashima, Mr. Maupin instructed him to have his attorneys transfer the patent to Mr. Maupin. Mr. Nakashima signed the letter and returned it to Mr. Maupin. These circumstances may well have led Mr. Maupin to believe that the patent had been validly assigned to him.

Mr. Maupin also testified that he believed he was acting under Mr. Iki's authorization when he photocopied Mr. Iki's signature onto the August 1991 document. Accordingly, Mr. Maupin could have had a good faith belief that the August 1991 document was an effective assignment. The district court has never found to the contrary, and the evidence does not support a finding to the contrary. Also, while the parties now apparently agree that Mr. Iki did not have authority to sign on behalf of Al–Flow, no evidence showed that Mr. Maupin knew or even had reason to know this.

Furthermore, the evidence does not show that Mr. Maupin lacked a good faith belief that the Al–Flow–to–Robyn document and the Robyn–to–Maupin document transferred title to him. In its earlier reviews of these facts, this court found those documents insufficient to give Mr. Maupin a valid title to the patent because Robyn International had been liquidated before the date of the Robyn–to–Maupin document. Moreover Mr. Iki, who signed the document, had been deleted as a Robyn director. However, the record does not show that Mr. Maupin had reason to know of Robyn International's liquidation or of Mr. Iki's loss of rights as a director. Thus, this evidence again does not suffice to show Mr. Maupin knew of the defects in his patent title and asserted it in bad faith.

Besides these points, Filtroil has not shown that the September 1998 document is an invalid assignment. In earlier proceedings, the district court and this court merely held that Driveline did not provide enough evidence to authenticate it. Accordingly, the evidence does not show that Mr. Maupin lacked a good faith belief that the September 1998 document transferred title to him.

In sum, while Driveline has not produced a valid assignment of the '135 patent to Driveline Specialties, Inc. or Mr. Maupin, the evidence also does not show that Mr. Maupin lacked a good faith belief that he owned the patent when he publicized it to Filtroil and its customers. Because the record does not show that Mr. Maupin publicized the '135 patent in bad faith, this court is left with a definite and firm conviction that a mistake has been committed. This court thus reverses the district court's determination that Driveline tortiously interfered with Filtroil's contract expectancies. *See Hunter Douglas,* 153 F.3d at 1336 (without proof of bad faith, "the [state tort] claim would fail on the merits").

█ Section 285 of title 35 of the United States Code states: "The court in exceptional cases may award reasonable attorney fees to the prevailing party." To establish an exceptional case, Filtroil must show "unfairness, bad faith, or inequitable conduct on the part of" Driveline. *Bada-*

*lamenti v. Dunham's, Inc.,* 896 F.2d 1359, 1364, 13 USPQ2d 1967, 1972 (Fed.Cir. 1990). Bad faith conduct sufficient to make a case exceptional may include, *"inter alia,* inequitable conduct during prosecution of a patent or misconduct during litigation." *Reactive Metals,* 769 F.2d at 1582. Reliance on bad faith to show an exceptional case requires clear and convincing evidence. *Id.*

■ The district court found that Mr. Maupin committed "inequitable conduct." Inequitable conduct either occurs when a patent applicant, with intent to deceive, does not disclose material information to the PTO or submits false material information. *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.,* 863 F.2d 867, 872, 9 USPQ2d 1384, 1389 (Fed.Cir.1988). The benchmark for materiality is the information's relevance to patentability under the legal standards. *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.,* 120 F.3d 1253, 1257, 43 USPQ2d 1666, 1669 (Fed. Cir.1997).

■ Mr. Maupin's conduct before the PTO, which Filtroil asserts was inequitable, consisted of submitting purported assignments and related documents for recording. While the documents and related information were material to patent ownership, they were not even arguably "material to patentability." *Id.* Therefore, the district court's finding of an exceptional case cannot rest on a finding of inequitable conduct.

■ Filtroil also argues that the case is exceptional because Driveline's infringement counterclaim against Filtroil was frivolous, and because Mr. Maupin engaged in bad faith conduct. As discussed above, the evidence does not support a finding that Mr. Maupin lacked a good faith belief that he owned the '135 patent. Similarly, the evidence does not show that

when Driveline filed the counterclaim it had reason to believe it did not have valid title to the '135 patent. Accordingly, Driveline's conduct in maintaining its infringement claim was not frivolous. *See Hoffmann–La Roche, Inc. v. Invamed Inc.,* 213 F.3d 1359, 1365–66, 54 USPQ2d 1846, 1850 (Fed.Cir.2000) (holding that a case was not exceptional as frivolous where the prevailing party did not present evidence that at the time of filing the patentee had reason to believe the accused processes did not infringe the asserted patents).

Additionally, other circumstances are insufficient to show bad faith conduct on the part of Mr. Maupin. The evidence does not show that Mr. Maupin failed to comply with the district court's January 1998 injunction or the preceding preliminary injunction. On October 27, 1997, while the preliminary injunction was in force, Mr. Maupin wrote a letter to Mr. Yamamoto wherein Mr. Maupin requested Mr. Yamamoto's assistance in securing valid title to the '135 patent. At the close of the letter, Mr. Maupin stated that he had been negotiating with several large companies about selling his "interests in this filter product." The preliminary injunction enjoined Mr. Maupin from marketing or seeking royalties under the '135 patent. However, it is possible that Mr. Maupin was referring to other interests in the filter products, such as supply contracts. Accordingly, Filtroil has not submitted clear and convincing evidence that Mr. Maupin violated the injunction, let alone that he did it in bad faith. *See Reactive Metals,* 769 F.2d at 1582 ("The quantum of proof required to prove bad faith conduct is clear and convincing evidence.").

Mr. Maupin also communicated directly with Mr. Yamamoto contrary to directions to communicate with Mr. Yamamoto only through his attorney. While such commu-

nications may have annoyed Mr. Yamamoto, Filtroil has not shown that Mr. Maupin willfully violated any laws or otherwise exhibited bad faith conduct by communicating directly with Mr. Yamamoto.

Mr. Maupin did not violate the injunction by sending the June 2000 letters to Filtroil's customers. In those letters, Mr. Maupin asserted that he had obtained a new assignment of the '135 patent from Al-Flow. He also offered to help Filtroil's customers market filters. Because Mr. Maupin did not assert the patent against the customers or otherwise market the '135 patent, these letters did not violate the injunction or amount to misconduct.

Finally, Mr. Maupin did not engage in bad faith conduct when he used pictures of Filtroil filters with the labels removed in his advertisements. Mr. Maupin obtained permission to use the pictures from the photographer, Michael Bailey. Moreover, Filtroil has not shown how the advertisements violated any laws or otherwise demonstrated bad faith conduct by Mr. Maupin. In view of all the evidence in the record, this court is left with a definite and firm conviction that this case is not exceptional.

In conclusion, this court reverses the district court's finding in favor of Filtroil on its tortious interference claim because Filtroil did not show that Mr. Maupin asserted the patent in bad faith. Accordingly, this court vacates the October 2000 injunction. This court, however, does not vacate the December 1998 injunction. This court reverses the district court's exceptional case finding because Filtroil did not provide sufficient evidence that Mr. Maupin committed inequitable conduct before the PTO, engaged in bad faith conduct, or otherwise engaged in conduct sufficient to support a finding that the case is exceptional. Accordingly, this court also

reverses the district court's award of attorney fees to Filtroil.

MAYER, Chief Judge, dissenting-in-part.

MAYER, Chief Judge.

"[F]ederal patent law bars the imposition of liability for publicizing a patent in the marketplace unless the plaintiff can show that the patentholder acted in bad faith." *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1336 (Fed.Cir. 1998), *overruled on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed.Cir.1999). "Exactly what constitutes bad faith remains to be determined on a case by case basis. Obviously, if the patentee knows that the patent is invalid, unenforceable, or not infringed, yet represents to the marketplace that a competitor is infringing the patent, a clear case of bad faith representations is made out." *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1354 (Fed.Cir.1999).

In this case, Maupin knew that he lacked sufficient evidence of a valid assignment of the '135 patent to lift the injunction prohibiting him from asserting the patent. On March 30, 2000, we issued our opinion affirming the district court's refusal to modify the injunction. *Filtroil, N.A., Inc. v. Maupin*, 2000 WL 33544088, 2000 U.S.App. LEXIS 5759 (Fed.Cir.2000). In spite of this judgment, Maupin sent a letter to Filtroil's customers on June 26, 2000, stating: "I have obtained an assignment of the '135 patent directly from Al-Flow Company, the original owner of the Patent. I have registered this with the United States Patent and Trademark Office. I have attached a copy of that assignment for your review."

"In general, a threshold showing of incorrectness or falsity, or disregard for either, is required in order to find bad faith

in the communication of information about the existence or pendency of patent rights." *Mikohn Gaming Corp. v. Acres Gaming, Inc.,* 165 F.3d 891, 897 (Fed.Cir. 1998). Although the district court did not make an explicit finding of bad faith, the June 26, 2000, letter by Maupin is clear evidence of his disregard for the truth in communicating his patent rights to the market. Therefore, I agree with the district court's finding of tortious interference, and I would uphold the October 2000 injunction.